### McCARLEY v. FOSTER–MILBURN CO. et al.

Civ. No. 4223.

United States District Court
W. D. New York.

March 9, 1950.

C. Ray Robinson, of Merced, Cal., and Selby G. Smith, of Buffalo, N. Y., for plaintiff.

Frank A. Pfalzer, Buffalo, N. Y. (Joseph J. Desmond, Buffalo, N. Y., of counsel), for defendants.

KNIGHT, Chief Judge.

Plaintiff moves to change place of trial of this action to U. S. District Court: Northern Division of Southern District, sitting in Fresno, California. His counsel cite 28 U.S.C.A. § 1404(a) and state: "We rely * * * upon each of the three grounds included within this section, namely: (1) the convenience of the parties (2) the convenience of the witnesses and (3) the interest of justice."

Plaintiff, a citizen of California suing as administrator of the estate of his deceased wife, alleges that, on or about February 10, 1949, she purchased in Merced, California, a bottle of "Westal", made and distributed by defendant New York corporations, consumed its poisonous contents and on March 2, 1949, died there as a proximate result thereof. He demands judgment in sum of $300,000 and makes three claims for relief based on: (1) negligence; (2) implied warranty; (3) "false representations by misbranding and otherwise."

28 U.S.C.A. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

28 U.S.C.A. § 1391(a) provides: "A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside."

Both defendants are New York corporations having their business offices in Buffalo, New York.

Rule 4(d) of Federal Rules of Civil Procedure, 28 U.S.C.A., provides: "Service shall be made as follows: * * * (3) Upon a domestic or foreign corporation * * * by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant."

Plaintiff's counsel admit they could not effectuate such service upon defendants in California. They allege in their memorandum: "Our presuit investigation indicated that defendants were not doing business in California to the extent necessary to establish their presence for the purpose of service of process upon them. This being the case, it appeared to us that we had no choice but to sue them in the only other available forum, namely, the district of their residence, and once having brought them properly within the jurisdiction of the federal courts to then invoke the right of transfer on the basis of the doctrine of *forum non conveniens* * * *."

W. G. Gomez, Jr., vice-president and secretary of Foster-Milburn Company and secretary of Westwood Pharmacal Corporation, in an opposing affidavit, alleges: "The defendants * * * do not do business in the State of California, have no officers * * * no agents * * * no office in (said state), and no valid service can be made upon them in (said state)."

The application of said section 1404 (a) of 28 U.S.C.A. depends on whether the words "where it might have been brought"

mean actually or potentially. Rule 3 of Federal Rules of Civil Procedure provides: "A civil action is commenced by filing a complaint with the court." The words "brought" and "commence" are synonymous. "A suit is brought when in law it is commenced". Goldenberg v. Murphy, 108 U.S. 162, 163, 2 S.Ct. 388, 389, 27 L.Ed. 686. "The new statute (28 U.S.C.A. § 1404(a)) assumes that the action has been instituted in a proper district, and grants to the court discretion to change the place of trial to some other district in which the action might have been originally commenced." United States v. E. I. DuPont De Nemours & Co., D.C.D.C., 83 F.Supp. 233, 234. Actually when the instant action was commenced in this court, service on the two defendants could not be effected in California. Process could not be served in that state by a marshal of this court for his authority "to make service is limited to the territorial jurisdiction of the court of which he is an officer, and, in the absence of specific provision of federal statute, there is no authority for sending the process of one district into another to be served by the marshal of the latter district." Boykin v. Hope Production Co., D.C.W.D.La., 58 F.2d 1041, 1042.

Said section 1404(a) must be read with said section 1391(a), which limits the venue in cases based on diversity of citizenship. In such cases, except as otherwise provided by law, the action may "be brought only in the judicial district where all plaintiffs or all defendants reside."

In the case of Sherman v. Chafets, now pending in this court, plaintiff sued defendant for personal injuries sustained in an automobile collision in Florida. Defendant actually could not be served in New York state. He was served in Michigan, where he resided. Plaintiff then moved to change the place of trial from the U. S. District Court in Michigan to this district, basing his motion on said sections 1391(a) and 1404(a) of U.S.C.A.

Plaintiff's attorney in his brief "urged that inasmuch as this action could have been brought in the Western District of New York under Section 1391 * * *, provided the defendant could have been found within the State of New York by the United States Marshal located at Buffalo or Rochester, New York, that the Western District of the State of New York is a proper forum for the trial of this action and that transfer of the action from the Eastern District of Michigan, Southern Division, to the Western District of New York is authorized and entirely possible under Section 1404 * * *."

The motion was opposed by defendant's attorneys but was granted, without opinion, by U. S. District Judge Thornton.

In Barnhart v. John B. Rogers Producing Co., D.C.N.D.Ohio, W.D., 86 F.Supp. 595, plaintiff, a citizen of Pennsylvania, could not serve process upon defendant in that state but brought suit and effected service in Ohio and then moved to change place of trial to Pennsylvania. The court, in denying the motion, did not consider the words "where it might have been brought" of said section 1404(a) but based its decision on the ground that the section "is not available to plaintiffs who voluntarily choose their own forum." 86 F.Supp at page 599. The same principle was applied in Bolten v. General Motors Corp., D.C.N.D.Ill.E.D., 81 F.Supp. 851.

In Greve v. Gibraltar Enterprises, D.C. D.N.M., 85 F.Supp. 410, defendant's motion under said section 1404(a) to change place of trial was opposed by plaintiff on the ground that the action could not have been originally brought in Colorado because the statute of limitations had run. The court said: "With plaintiff's contention in this regard the Court cannot agree. First, the Court believes the language of the statute, 'where it might have been brought', relates primarily to venue and in a proper case would include jurisdiction. It concerns plaintiff's right to institute the suit originally. It does not include problematical or possible defenses which might or might not be interposed by a defendant." 85 F.Supp. at pages 412–413.

Prof. Moore, in his recent commentary on the Judicial Code, after quoting said section 1404(a) says: "This is a clear recognition that the doctrine of forum non conveniens is a facet of venue; and that

it involves elements of convenience to all concerned." p. 201.

"Jurisdiction and venue are two different concepts * * *. 'Jurisdiction' connotes the power to hear and decide a matter on its merits, while 'venue' relates exclusively to the locality of the law suit and, though it be defined by legislation, it primarily concerns the convenience of the litigants." The North River, D.C.E.D.N.Y., 57 F.Supp. 808, 810.

"The jurisdiction of the federal courts—their power to adjudicate—is a grant of authority to them by Congress and thus beyond the scope of litigants to confer. But the locality of a law suit—the place where judicial authority may be exercised—though defined by legislation relates to the convenience of litigants and as such is subject to their disposition." Neirbo Co. v. Bethlehem Shipbuilding Corp., Ltd., 308 U.S. 165, 167–168, 60 S.Ct. 153, 154, 84 L. Ed. 167, 128 A.L.R. 1437.

"Venue relates to the convenience of litigants." Panhandle Eastern Pipe Line Co. v. Federal Power Commission, 324 U.S. 635, 639, 65 S.Ct. 821, 823, 89 L.Ed. 1241:

Defendants' attorney in the instant case has cited no authority for the proposition that under said section 1404(a) there must be the possibility of effective service upon defendant, other than a dictum in Christopher v. American News Co., 7 Cir., 176 F. 2d 11, 13.

A statement of the injustice that may result to a plaintiff from mere technicality is found in the Cardozo Lecture of Mr. Justice Robert H. Jackson, printed in the January, 1945, issue of Columbia Law Review. He said: "Thus when one must seek a remedy, whether he turns to state courts or to federal courts, he finds them subject to territorial limitations which often force one injured in person or property to go far from the place of all the transactions and away from the only place he ever has lived or traded, to some distant forum." p. 23. In footnote 93 it is said: "The problem of securing justice at home against foreign corporations who are present for trading purposes but are not to be 'found' for service of process is a serious one.

See Rosenberg Bros. & Co. v. Curtis Brown Co., 1923, 260 U.S. 516 [43 S.Ct. 170, 67 L.Ed. 372]; James-Dickinson Farm Mortgage Co. v. Harry, 1927, 273 U.S. 119 [47 S.Ct. 308, 71 L.Ed. 569]. These cases pushed the due process protection for foreign corporations beyond that which our New York courts thought required or desirable (citing cases)."

He further said: "It is not suggested, of course, that either a state or federal court be authorized to call one to a foreign state to answer complaints except where some circumstance makes trial more just and appropriate than elsewhere. But in that class of cases I see no reason why fortuitous circumstances concerning service of process should preclude an intelligent determination of venue." p. 24.

Has said section 1404(a) remedied this evil?

The reviser's note states: "Subsection (a) was drafted in accordance with the doctrine of forum non conveniens, permitting transfer to a more convenient forum, even though the venue is proper. As an example of the need of such a provision, see Baltimore & Ohio R. Co. v. Kepner, 1941, 314 U.S. 44, 62 S.Ct. 6, 86 L.Ed. 28, which was prosecuted under the Federal Employer's Liability Act [45 U.S.C.A. § 51 et seq.] in New York, although the accident occurred and the employee resided in Ohio. The new subsection requires the court to determine that the transfer is necessary for convenience of the parties and witnesses, and further, that it is in the interest of justice to do so."

"It appears that 'forum non conveniens' was used for the first time in the latter part of the nineteenth century, apparently as a mere neo-Latin translation of the English phrase already familiar to Scottish judges." The Inconvenient Federal Forum, by Prof. Robert Braucher, Harvard Law Review, July, 1947, p. 909. The author further says: "The scope of the doctrine has been the subject of disagreement in Scotland as well as in America. (p. 909) * * * the normal result of a successful plea of forum non conveniens in modern times has been dismissal of the action

(p. 910). * * * Before 1929, when Blair published the classic American treatment of the doctrine, the phrase *forum non conveniens* had rarely appeared in the American reports." (pp. 911–912).

Said section 1404(a) has enlarged the scope of the doctrine of *forum non conveniens*. Greve v. Gibraltar Enterprises, supra, D.C.D.N.M., 85 F.Supp. at pages 413–414. Prof. Moore says: "Unlike the former statutes, the Code deals in section 1404 with forum non conveniens along modern and sensible lines for judicial administration. Where as * * * ciples (sic) of forum non conveniens resulted in the dismissal of an action, the doctrine now results in a transfer. The principles of section 1404 apply to all civil actions, whether the venue is governed by Title 28 or is governed by some other title of the United States Code." op. cit., p. 199.

In Barnhart v. John B. Rogers Producing Co., supra, decided October 4, 1949, the court said: "In all of the cases, except one, that the Court has found and examined that bear upon Section 1404(a), and they are very few because the section became effective on September 1, 1948, the moving party has been the defendant." 86 F.Supp. at page 597. The language of the section, however, does not limit to the moving parties defendant. The transfer depends on the statutory criteria of convenience of parties and witnesses and the interest of justice. Brown v. Insurograph, D. C.D.Del., 85 F.Supp. 328, Apparently these criteria can be invoked by a party plaintiff seeking transfer.

In the Harvard Law Review article above quoted it is further said: "It has been suggested that the bill might be interpreted as requiring new service of process after transfer. But the provision under discussion must be read in conjunction with Section 1406(a), which provides that when venue is laid in the wrong district the case 'shall' be transferred to a proper district and which, according to the committee report, authorizes 'transfer instead of dismissal.' The suggested interpretation would be inconsistent not only with the plain meaning of the word 'transfer' but also with cases under previous statutes,

which have treated steps taken before transfer as continuing to have validity thereafter. A literal interpretation of the bill in accord with its obvious purpose would recognize that it provides a device for service of process outside the district of trial. So construed, it would merely generalize various exceptional provisions previously made; there would be no substantial constitutional problem. The need for such a device has been forcefully stated by Mr. Justice Jackson (in the Columbia Law Review article above cited)." p. 934.

■ In the instant case, plaintiff resides in Merced, California. That district is a proper venue—28 U.S.C.A. 1391(a). Defendants were validly served with process in this district. They might have been served in California if they could have been reached by process. The fact they could not be, when the action was commenced, does not affect plaintiff's right to move for a transfer if the statutory criteria of said section 1404(a) are met.

Vide Mississippi Publishing Corp. v. Murphree, 326 U.S. 438, 66 S.Ct. 242, 90 L.Ed. 185.

These criteria must now be considered.

(1) *Convenience of parties.*

The only parties are an individual resident of Merced, California, and two New York corporations having their business offices in Buffalo, New York.

Plaintiff in his affidavit alleges:

"14. Affiant further states that he is a man of modest means and if the trial is held in Buffalo, New York, it would constitute a severe financial hardship to attend * * *, and further he would be unable to finance the cost of his side of the trial, that is, the transportation of the necessary witnesses for the plaintiff to and from Buffalo, New York, and the meals and lodging while there."

W. G. Gomez, Jr., in his aforesaid opposing affidavit alleges: "The absence of the officers and employees of the defendants, who must testify for (them), from their work for ten to fourteen days would seriously impair the efficient operation of a large and highly important industry. It would probably be impossible for all these

men to be absent from their work for such a length of time; consequently if this trial is held in California, the defendants will be deprived of the testimony of these witnesses."

These officers and employees are not named nor is their number stated.

(2) *Convenience of witnesses.*

Plaintiff's counsel state they have 26 named prospective witnesses and submit the affidavits of 18 of them. Said Gomez affidavit alleges that defendants' "witnesses live in Buffalo and its environs, or in New York City" and "include many doctors who are familiar with the product known as Westsal and have studied its effect upon the human body, and in addition research men and technicians who have conducted various experiments to prove the effect of Westsal upon animals."

These witnesses are not named nor is their number stated. The nature of their testimony is not fully disclosed. Perry v. Atchison, T. & S. F. Ry. Co., D.C.N.D. Cal.S.D., 82 F.Supp. 912, 913.

The 18 prospective witnesses for plaintiff, whose affidavits are submitted, include plaintiff, two attending physicians, an examining specialist, a registered nurse, a laboratory technician, the coroner present at the autopsy and who signed the 2 death certificates (certified photostats of which are annexed to his affidavit), persons who will testify that decedent was in good health prior to February 10, 1949, one who saw her purchase an unopened box of Westsal in a Merced pharmacy on that date, those who saw her sprinkle Westsal on her food, eat the food and noticed an immediate decline in her health, saw her carried into her physician's office on February 19, 1949, and immediately sent to a local hospital, where she died on March 2, 1949.

Decedent's attending physicians, James L. Dennis, M.D. and Roy T. Peck, M.D., will both testify that the Westsal so consumed was the proximate cause of her death. Dr. Dennis will further testify that, during her illness and ever since, he has made an intensive and careful study of all literature and case histories available to him in the United States on lithium poisoning and that her death was directly and proximately caused by her use of Westsal.

All of these 18 witnesses, except three, live in Merced, California, or its vicinity. Two live in Winton, California. Plaintiff's mother lives in Hartman, Arkansas. All of them except plaintiff, whose affidavit has been quoted, and decedent's mother state that for various reasons it will be impossible for them to spend two weeks in the trial at Buffalo, N. Y.

Plaintiff's attorney C. Ray Robinson in his moving affidavit alleges:

"6. In addition to the eighteen witnesses * * * affiant intends to call * * * Dr. C. C. Fitzgibbon, Dr. Harry Maytum, George Tiscornia, Mother Superior Stanislaus, Sister Mary Vienna, Sister Mary Joseph and Sister Mary Immaculate, (all of whom) work, reside and live in Merced, California) and Joseph Thom of Berkeley, California. 7. Affiant does not include individual affidavits of the above-named practicing Merced physicians for the reason that the testimony he expects from them is largely cumulative of the testimony already detailed in the individual affidavits." From the affidavit it appears that these two physicians at the request of Dr. Dennis went to the hospital and observed decedent's condition; that the Mother Superior and three Sisters are connected with hospital in Merced where decedent died; that two of the Sisters attended her; that these four persons are not permitted by the rules of their order to make affidavits; that George Tiscornia is the undertaker who embalmed decedent; that Joseph Thom, laboratory analyst at the state laboratory in Berkeley, analyzed specimens of decedent's urine and blood which "disclosed definitely the presence of lithium" but is not allowed to make an affidavit.

Defendants in their joint answer expressly admit the allegations in paragraph 4 of the complaint which reads: "4. At all times mentioned herein, and prior thereto, Defendant, Foster-Milburn Company was engaged, at Buffalo, New York, in the compounding, manufacture, assembly and

preparation of various chemical compounds, drugs and related products, including a salt substitute for human consumption denominated by the trade mark name of 'Westsal' and also known as 'Wes-sal'."

They deny the allegation that defendant Wood Pharmacal Corporation is a subsidiary and alter ego of Foster-Milburn Company engaged from Buffalo, N. Y. in the sale and distribution of Westsal; that, on or about February 10, 1949, decedent purchased a bottle of it in Merced, California; that she consumed the contents of it; that it "was poisonous and harmful to human beings"; that, on March 2, 1949, she died "as a direct and proximate result of the aforesaid consumption of the contents of the aforesaid bottle of Westsal."

It does not appear whether defendants intend to prove that decedent did not purchase a bottle of Westsal, or that the Westsal she did purchase was not made and distributed by them or that it was not poisonous or harmful to human beings. If they rely on the latter proof, they apparently will use expert witnesses not personally familiar with the circumstances of decedent's death. It has been held: "The residence of expert witnesses cannot be considered as controlling, or even of great importance, in determining questions of forum non conveniens. Fifth & Walnut, Inc. v. Loew's, Inc., D.C.S.D.N.Y.1948, 76 F.Supp. 64, 67." Magnetic Engineering & Mfg. Co. v. Dings Magnetic Separator Co., D.C.S.D.N.Y., 86 F.Supp. 13, 17.

Plaintiff's attorney Robinson in an undisputed affidavit, verified December 12, 1949, alleges that, on March 5, 1949, he notified defendants that he represented plaintiff; that on March 7, 1949, W. G. Gomez, Jr. (above mentioned) wrote him that a representative of defendants would call upon him in Merced, California; that, on March 11, 1949, J. H. Pourpore, Claims Superintendent for Home Indemnity Company called at his office, asked for certain specified data and stated the "Westwood people" would try to show that proper jurisdiction would be in New York State; that he talked with him several times and, on April 19, 1949, had a conference with him in San Francisco when latter "said he

was only authorized to make 'nuisance value' settlement, that I would have to sue in New York." Deponent further alleges:

"In view of above facts, I verily believe that the defendants are insured and protected by a policy in the Home Indemnity Company and that said Company is obligated to hire attorneys and experts and to defend without cost to defendants this suit and that they are so doing. The said Home Indemnity Company has regularly established offices in California and has regularly retained attorneys in California and in Fresno in particular."

Plaintiff's motion is therefore granted and an order may be entered transferring this action to the United States District Court, Northern Division of Southern District, in California.