HOFFMAN, U. S. DISTRICT JUDGE, *v.*
BLASKI ET AL.

No. 25. Argued April 19–20, 1960.—Decided June 13, 1960.*

*Charles J. Merriam* argued the cause for petitioner in No. 25. With him on the brief was *Samuel B. Smith.*

*John C. Butler* argued the cause and filed a brief for petitioner in No. 26.

*Daniel V. O'Keeffe* argued the cause for respondents in No. 25. With him on the brief were *Lloyd C. Root* and *John O'C. FitzGerald.*

*Warren E. King* argued the cause and filed a brief for respondents in No. 26.

MR. JUSTICE WHITTAKER delivered the opinion of the Court.

To relieve against what was apparently thought to be the harshness of dismissal, under the doctrine of *forum*

---

*Together with No. 26, *Sullivan, Chief Judge, U. S. District Court,* v. *Behimer et al.,* argued April 20, 1960, also on certiorari to the same Court.

*non conveniens,* of an action brought in an inconvenient one of two or more legally available forums, *Gulf Oil Corp.* v. *Gilbert,* 330 U. S. 501, and concerned by the reach of *Baltimore & Ohio R. Co.* v. *Kepner,* 314 U. S. 44,[1] Congress, in 1948, enacted 28 U. S. C. § 1404 (a), which provides:

"§ 1404. Change of venue.

"(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The instant cases present the question whether a District Court, in which a civil action has been properly brought, is empowered by § 1404 (a) to transfer the action, on the motion of the defendant, to a district in which the plaintiff did not have a *right* to bring it.

No. 25, *Blaski.*—Respondents, Blaski and others, residents of Illinois, brought this patent infringement action in the United States District Court for the Northern District of Texas against one Howell and a Texas corporation controlled by him, alleging that the defendants are residents of, and maintain their only place of business in, the City of Dallas, in the Northern District of Texas, where they are infringing respondents' patents. After being served with process and filing their answer, the defendants moved, under § 1404 (a), to transfer the action to the United States District Court for the Northern District of Illinois.[2] Respondents objected to the

---

[1] See the Reviser's Notes following 28 U. S. C. § 1404.

[2] The asserted basis of the motion was that trial of the action in the Illinois District Court would be more convenient to the parties and witnesses and in the interest of justice because several actions involving the validity of these patents were then pending in that court, and that pretrial and discovery steps taken in those actions had developed a substantial amount of evidence that would be relevant and useful in this action.

transfer on the ground that, inasmuch as the defend-
ants did not reside, maintain a place of business, or
infringe the patents in, and could not have been served
with process in, the Illinois district, the courts of that
district lacked venue over the action [3] and ability to com-
mand jurisdiction over the defendants; [4] that therefore
that district was not a forum in which the respondents
had a right to bring the action, and, hence, the court was
without power to transfer it to that district. Without
mentioning that objection or the question it raised, the
District Court found that "the motion should be granted
for the convenience of the parties and witnesses in the
interest of justice," and ordered the case transferred to
the Illinois district. Thereupon, respondents moved in
the Fifth Circuit for leave to file a petition for a writ of
mandamus directing the vacation of that order. That
court, holding that "[t]he purposes for which § 1404 (a)
was enacted would be unduly circumscribed if a transfer
could not be made 'in the interest of justice' to a district
where the defendants not only waive venue but to which
they seek the transfer," denied the motion. *Ex parte
Blaski,* 245 F. 2d 737, 738.

Upon receipt of a certified copy of the pleadings and
record, the Illinois District Court assigned the action
to Judge Hoffman's calendar. Respondents promptly
moved for an order remanding the action on the ground
that the Texas District Court did not have power to make
the transfer order and, hence, the Illinois District Court
was not thereby vested with jurisdiction of the action.

---

Defendants also stated in the motion that, if and when the case
be so transferred, they would waive all objections to the venue of
the Illinois District Court over the action and would enter their
appearance in the action in that court.

[3] See 28 U. S. C. § 1400 (b), quoted in note 10, *infra.*

[4] See Rule 4 (f) of the Fed. Rules Civ. Proc., quoted in note 11,
*infra.*

After expressing his view that the "weight of reason and logic" favored "retransfer of this case to Texas," Judge Hoffman, with misgivings, denied the motion. Respondents then filed in the Seventh Circuit a petition for a writ of mandamus directing Judge Hoffman to reverse his order. After hearing and rehearing, the Seventh Circuit, holding that "[w]hen Congress provided [in § 1404 (a)] for transfer [of a civil action] to a district 'where it might have been brought,' it is hardly open to doubt but that it referred to a district where the plaintiff . . . had a right to bring the case," and that respondents did not have a *right* to bring this action in the Illinois district, granted the writ, one judge dissenting. 260 F. 2d 317.

No. 26, *Behimer.*—Diversity of citizenship then existing, respondents, Behimer and Roberts, residents of Illinois and New York, respectively, brought this stockholders' derivative action, as minority stockholders of Utah Oil Refining Corporation, a Utah corporation, on behalf of themselves and others similarly situated, in the United States District Court for the Northern District of Illinois against Standard Oil Company and Standard Oil Foundation, Inc., Indiana corporations but licensed to do and doing business in the Northern District of Illinois, for damages claimed to have been sustained through the alleged illegal acquisition by defendants of the assets of the Utah corporation at an inadequate price.

After being served with process and filing their answer, the defendants moved, under § 1404 (a), to transfer the action to the United States District Court for the District of Utah.[5] Respondents objected to the transfer on the

---

[5] The motion asserted, and the court found, that trial of the action in the district of Utah would be more convenient to the parties and witnesses for the reasons, among others, that all of the officers and directors, and a majority of the minority stockholders, of the Utah corporation reside in that district; that the books and records of the corporation are located in that district; that the substantive law

ground that, inasmuch as the defendants were not incorporated in or licensed to do or doing business in, and could not be served with process in. the district of Utah, the courts of that district lacked venue over the action [6] and ability to command jurisdiction over the defendants; [7] that therefore that district was not a forum in which the respondents had a right to bring the action, and, hence, the court was without power to transfer it to that district. Without mentioning the question raised by that objection, the court found that the proposed transfer would be "for the convenience of the parties and witnesses and in the interest of justice," and ordered the case transferred to the district of Utah.

Respondents then filed in the Seventh Circuit a petition for a writ of mandamus directing the District Court to reverse its order. After hearing, the Seventh Circuit, following its decision in *Blaski* v. *Hoffman, supra,* granted the writ. 261 F. 2d 467.

To settle the conflict that has arisen among the circuits respecting the proper interpretation and application of § 1404 (a),[8] we granted certiorari. 359 U. S. 904; 361 U. S. 809.

---

of Utah governs the action, and that the calendar of the Utah court was less congested than the Illinois one.

As part of their motion, defendants stated that, in the event of the transfer of the action as requested, they would waive all objections to the venue of the Utah court and enter appearances in the action in that court.

[6] See 28 U. S. C. § 1391 (c), quoted in note 10, *infra.*

[7] See Rule 4 (f) of the Fed. Rules Civ. Proc., quoted in note 11, *infra.*

[8] The decisions of the circuits are in great conflict and confusion. The Second Circuit has held one way on a *plaintiff's* motion and the other on a *defendant's* motion. Compare *Foster-Milburn Co.* v. *Knight,* 181 F. 2d 949, 952–953, with *Anthony* v. *Kaufman,* 193 F. 2d 85, and *Torres* v. *Walsh,* 221 F. 2d 319. The Fifth Circuit, too, has held both ways. Compare *Blackmar* v. *Guerre,* 190 F. 2d

Without sacrifice or slight of any tenable position, the parties have in this Court commendably narrowed their contentions to the scope of the only relevant inquiry. The points of contention may be sharpened by first observing what is not in contest. Discretion of the district judges concerned is not involved. Propriety of the remedy of mandamus is not assailed. No claim is made here that the order of the Fifth Circuit denying the motion of respondents in the *Blaski* case for leave to file a petition for writ of mandamus, 245 F. 2d 737, precluded Judge Hoffman or the Seventh Circuit from remanding that case.[9] Petitioners concede that these actions were

427, 429, with *Ex parte Blaski*, 245 F. 2d 737. The Ninth Circuit has held a District Court to be without power to transfer an action, on *plaintiff's* motion, to a district in which plaintiff did not have a legal right to bring it originally. *Shapiro* v. *Bonanza Hotel Co.*, 185 F. 2d 777, 780. The Third Circuit has held, two of the five judges dissenting, that a District Court has power to transfer an action, on *defendant's* motion, to a district in which the plaintiff did not have a legal right to bring it. *Paramount Pictures, Inc.*, v. *Rodney*, 186 F. 2d 111. The First Circuit has upheld transfer, on *defendant's* motion, to a district in which venue existed but where process could not be served on defendants (but defendants had been served in the transferor district). *In re Josephson*, 218 F. 2d 174.

[9] That order did not purport to determine the jurisdiction of the transferee court and therefore did not preclude Judge Hoffman of power to determine his own jurisdiction, nor did it preclude the power of the Seventh Circuit to review his action. *Fettig Canning Co.* v. *Steckler*, 188 F. 2d 715 (C. A. 7th Cir.); *Wilson* v. *Kansas City Southern R. Co.*, 101 F. Supp. 56 (D. C. W. D. Mo.); *United States* v. *Reid*, 104 F. Supp. 260, 266 (D. C. E. D. Ark.). Several reasons why principles of *res judicata* do not apply may be stated in a few sentences. The orders of the Texas and Illinois District Courts on the respective motions to transfer and to remand, like the orders of the Fifth and Seventh Circuits on the respective petitions for mandamus, were (1) interlocutory, (2) not upon the merits, and (3) were entered in the same case by courts of coordinate jurisdiction. Here the sole basis of the right of the Fifth Circuit to entertain the petition for a writ of mandamus was to protect its appellate jurisdiction,

properly brought in the respective transferor forums; that statutory venue did not exist over either of these actions in the respective transferee districts,[10] and that the respective defendants were not within the reach of the process of the respective transferee courts.[11]  They concede, too,

---

28 U. S. C. § 1651 (a); *Magnetic Engineering & Mfg. Co.* v. *Dings Mfg. Co.*, 178 F. 2d 866, 869–870 (C. A. 2d Cir.); *Foster-Milburn Co.* v. *Knight*, 181 F. 2d 949, 951 (C. A. 2d Cir.); *In re Josephson*, 218 F. 2d 174, 177 (C. A. 1st Cir.); *Torres* v. *Walsh*, 221 F. 2d 319, 321 (C. A. 2d Cir.) and, by denying leave to file the petition, it forsook such right, but it did not thereby determine that the Illinois District Court had jurisdiction of the action.  The question of that court's jurisdiction still remained subject to attack as of right on appeal to the Seventh Circuit from any final judgment in the action. When, therefore, jurisdiction of the District Court was assailed in the Seventh Circuit, by the petition for mandamus, that court surely had power to determine whether it would hold, on such an appeal, that the Illinois District Court did or did not have jurisdiction of the action and, if not, to say so and thus avoid the delays and expense of a futile trial.

[10] Venue over patent infringement actions is prescribed by 28 U. S. C. § 1400 (b), which provides:

"(b) Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."

See *Stonite Prod. Co.* v. *Melvin Lloyd Co.*, 315 U. S. 561; *Fourco Glass Co.* v. *Transmirra Products Corp.*, 353 U. S. 222.

General venue over actions against corporations is prescribed by 28 U. S. C. § 1391 (c), which provides:

"(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

[11] General provisions respecting service of the process of federal courts are prescribed by Rule 4 (f) of the Fed. Rules Civ. Proc., which provides:

"(f) Territorial limits of effective service.

"All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held and, when a statute of the United States so provides, beyond

that § 1404 (a), being "not unlimited," "may be utilized only to direct an action to any other district or division 'where it might have been brought,'" and that, like the superseded doctrine of *forum non conveniens, Gulf Oil Corp.* v. *Gilbert,* 330 U. S. 501, 507, the statute requires "an alternative forum in which plaintiff might proceed."

Petitioners' "thesis" and sole claim is that § 1404 (a), being remedial, *Ex parte Collett,* 337 U. S. 55, 71, should be broadly construed, and, when so construed, the phrase "where it might have been brought" should be held to relate not only to the time of the bringing of the action, but also to the time of the transfer; and that "if at such time the transferee forum has the power to adjudicate the issues of the action, it is a forum in which the action might *then* have been brought." [12]     (Emphasis added.)     They argue that in the interim between the bringing of the action and the filing of a motion to transfer it, the defendants may move their residence *to,* or, if corporations, may begin the transaction of business in, some other district, and, if such is done, the phrase "where it might have been brought" should be construed to empower the District Court to transfer the action, on motion of the defendants, to such other district; and that, similarly, if, as here, the defendants move to transfer the action to some other district and consent to submit to the jurisdiction of such other district, the latter district should be held one "in which the action might *then* have been brought."     (Emphasis added.)

We do not agree.     We do not think the § 1404 (a) phrase "where it might have been brought" can be interpreted to mean, as petitioners' theory would require,

---

the territorial limits of that state.    A subpoena may be served within the territorial limits provided in Rule 45."

[12] A similar view was expressed in *Paramount Pictures, Inc.,* v. *Rodney,* 186 F. 2d 111 (C. A. 3d Cir.).    The court there thought that the § 1404 (a) phrase "might have been brought" means "could now be brought."    *Id.,* at 114.

"where it may now be rebrought, with defendants' consent." This Court has said, in a different context, that § 1404 (a) is "unambiguous, direct [and] clear," *Ex parte Collett,* 337 U. S., at 58, and that "the unequivocal words of § 1404 (a) and the legislative history . . . [establish] that Congress indeed meant what it said." *United States* v. *National City Lines, Inc.,* 337 U. S. 78, 84. Like the Seventh Circuit, 260 F. 2d, at 322, we think the dissenting opinion of Judges Hastie and McLaughlin in *Paramount Pictures, Inc.,* v. *Rodney,* 186 F. 2d 111 (C. A. 3d Cir.), correctly answered this contention:

> "But we do not see how the conduct of a defendant after suit has been instituted can add to the forums where 'it might have been brought.' In the normal meaning of words this language of Section 1404 (a) directs the attention of the judge who is considering a transfer to the situation which existed when suit was instituted."

It is not to be doubted that the transferee courts, like every District Court, had jurisdiction to entertain actions of the character involved, but it is obvious that they did not acquire jurisdiction over these particular actions when they were brought in the transferor courts. The transferee courts could have acquired jurisdiction over these actions only if properly brought in those courts, or if validly transferred thereto under § 1404 (a). Of course, venue, like jurisdiction over the person, may be waived. A defendant, properly served with process by a court having subject matter jurisdiction, waives venue by failing seasonably to assert it, or even simply by making default. *Commercial Ins. Co.* v. *Stone Co.,* 278 U. S. 177, 179–180; *Neirbo Co.* v. *Bethlehem Shipbuilding Corp., Ltd.,* 308 U. S. 165. But the power of a District Court under § 1404 (a) to transfer an action to another district is made to depend not upon the wish or waiver of the defendant but, rather, upon whether the transferee district was one

in which the action "might have been brought" by the plaintiff.

The thesis urged by petitioners would not only do violence to the plain words of § 1404 (a), but would also inject gross discrimination. That thesis, if adopted, would empower a District Court, upon a finding of convenience, to transfer an action to any district desired by the *defendants* and in which they were willing to waive their statutory defenses as to venue and jurisdiction over their persons, regardless of the fact that such transferee district was not one in which the action "might have been brought" by the plaintiff. Conversely, that thesis would not permit the court, upon motion of the *plaintiffs* and a like showing of convenience, to transfer the action to the same district, without the consent and waiver of venue and personal jurisdiction defenses by the defendants. Nothing in § 1404 (a), or in its legislative history, suggests such a unilateral objective and we should not, under the guise of interpretation, ascribe to Congress any such discriminatory purpose.

We agree with the Seventh Circuit that:

> "If when a suit is commenced, plaintiff has a right to sue in that district, independently of the wishes of defendant, it is a district 'where [the action] might have been brought.' If he does not have that right, independently of the wishes of defendant, it is not a district 'where it might have been brought,' and it is immaterial that the defendant subsequently [makes himself subject, by consent, waiver of venue and personal jurisdiction defenses or otherwise, to the jurisdiction of some other forum]." 260 F. 2d, at 321 and 261 F. 2d, at 469.

Inasmuch as the respondents (plaintiffs) did not have a right to bring these actions in the respective transferee districts, it follows that the judgments of the Court of Appeals were correct and must be *Affirmed.*

MR. JUSTICE STEWART, concurring in No. 25.

Two Courts of Appeals disagreed about the meaning of a federal law, as conscientious federal courts sometimes do. From the point of view of efficient judicial administration the resulting history of this litigation is no subject for applause. But, as the Court points out, no claim was made here that the decision of the Fifth Circuit precluded Judge Hoffman or the Seventh Circuit from remanding the case, and on the merits of that question I agree with the Court that principles of *res judicata* were inapplicable. In any event, the conflict between the Circuits is now resolved, and what happened here will not happen again.

MR. JUSTICE FRANKFURTER, whom MR. JUSTICE HARLAN and MR. JUSTICE BRENNAN join, dissenting.*

My special disagreement with the Court in this case concerns a matter of judicial administration arising out of the fact that after the question on the merits had been considered by the Court of Appeals for the Fifth Circuit, the same question between the same parties was later independently again adjudicated by the Court of Appeals for the Seventh Circuit. I cannot join the Court's approval of the right of the Seventh Circuit to make such a re-examination. It is true that in its opinion in this case and No. 26, *Sullivan* v. *Behimer,* decided today, the Court settles the question over which the two Courts of Appeals disagreed, so that it should not recur. This is not, however, an isolated case. A general principle of judicial administration in the federal courts is at stake. In addition, while the Court today settles one problem arising in the application of § 1404 (a), other questions involving that section may readily give rise to conflicting

---

*[This opinion applies only to No. 25, *Hoffman* v. *Blaski.* For opinion of MR. JUSTICE FRANKFURTER, joined by MR. JUSTICE HARLAN and MR. JUSTICE BRENNAN, in No. 26, *Sullivan* v. *Behimer,* see *post,* p. 351.]

views among the eleven Courts of Appeals. Under the Court's opinion, for example, transfer always depends upon the meaning of the federal venue statutes, and upon the jurisdiction of the transferee court over the person of the defendant, which may be a problem of constitutional dimensions, and there is obviously a substantial opportunity for conflict between the Courts of Appeals over those matters. We ought to forestall in other situations of potential controversy the kind of judicial unseemliness which this case discloses.

Plaintiffs brought this action for patent infringement in the United States District Court for the Northern District of Texas. Defendants moved pursuant to 28 U. S. C. § 1404 (a) to have it transferred to the Northern District of Illinois. Finding transfer to be "for the convenience of parties and witnesses, in the interest of justice," the Texas District Court granted the motion and transferred the action to Illinois. Plaintiffs sought a writ of mandamus in the Court of Appeals for the Fifth Circuit to require the Texas District Court to set aside the transfer. In plaintiffs' view the Northern District of Illinois was not a place where the action "might have been brought," and thus the Texas District Court had no power to transfer the action there under § 1404 (a). The Fifth Circuit fully examined the merits of this claim and rejected it, holding that in the circumstances before the court the Northern District of Illinois was a jurisdiction where the action "might have been brought." Leave to file a mandamus petition was therefore denied, and the action was duly transferred. 245 F. 2d 737.

Upon the assignment of the action to the calendar of the United States District Court for the Northern District of Illinois, plaintiffs moved that court to disregard the explicit decision of another District Court in the same case, sustained by the appropriate Court of

Appeals, and to send the case back to Texas. Plaintiffs advanced precisely the claim already rejected by the Fifth Circuit, namely, that the Northern District of Illinois was not a place where the action "might have been brought" within the proper meaning of § 1404 (a). Transfer had, in their view, erroneously been ordered by the Texas District Court and the power to transfer erroneously approved by the Fifth Circuit. Plaintiffs' application was denied by the Illinois District Court. Still not accepting the decision against them, plaintiffs again sought an appellate remedy by way of mandamus, this time in the Court of Appeals for the Seventh Circuit. Initially, mandamus was denied. On rehearing, however, the Seventh Circuit held that the prior decision of the Fifth Circuit was wrong. It held that § 1404 (a) did not authorize transfer to Illinois, and it ordered the action "remanded" to the Texas District Court within the Fifth Circuit, from whence it had come, to go forward there. 260 F. 2d 317. That "remand" is the order which is here on certiorari. 359 U. S. 904.

The Court of Appeals for the Seventh Circuit has thus refused to permit an Illinois District Court to entertain an action transferred to it with the approval, after full consideration of the problem involved, of the Court of Appeals for the Fifth Circuit. The Seventh Circuit considered no evidence not before the Fifth Circuit in so deciding. It considered precisely the same issue and reached a contrary legal conclusion. This was after explicit prior adjudication of the question at the same level of the federal system in the same case and between the same parties. Because the question involved is the transferability of the action, the consequence of the Seventh Circuit's disregard of the Fifth Circuit's prior decision is not only that a question once decided has been reopened, with all the wasted motion, delay and

expense which that normally entails. Unless and until this Court acts, the litigants have no forum in which trial may go forward. Each Court of Appeals involved has refused to have the District Court in its Circuit hear the case and has sent it to a District Court in the other.

This is the judicial conduct the Court now approves. The Court does not suggest that the Court of Appeals for the Fifth Circuit was powerless, was without jurisdiction, to review, as it did, the question of the applicability of § 1404 (a) to this case. The occasion for the Fifth Circuit's review by way of mandamus may have been, as the Court suggests, "to protect its appellate jurisdiction," but there can be no question that the Fifth Circuit undertook to and did resolve on its merits the controversy between the parties regarding the meaning of § 1404 (a). Yet the Court decides that the review in the Fifth Circuit was so much wasted motion, properly ignored by the Court of Appeals for the Seventh Circuit in arriving at a contrary result. The case is treated just as if the Fifth Circuit had never considered the questions involved in it. I am at a loss to appreciate why all the considerations bearing on the good administration of justice which underlie the technical doctrine of *res judicata* did not apply here to require the Court of Appeals for the Seventh Circuit to defer to the previous decision. "Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties. We see no reason why this doctrine should not apply in every case where one voluntarily appears, presents his case and is fully heard, and why he should not, in the absence of fraud, be thereafter concluded by the judgment of the tribunal to which he has submitted his cause." *Baldwin* v. *Traveling Men's Assn.,* 283 U. S. 522, 525–526. One would suppose that these considerations would be

especially important in enforcing comity among federal courts of equal authority.

The fact that the issue involved is the propriety of a transfer of the action only makes the case for deference to the previous decision of a coordinate court in the same litigation that much stronger. The course of judicial action now approved by the Court allows transfer over a persisting objection only when concurred in by two sets of courts: those in the place where the case begins, and those in the place to which transfer is ordered. Not only does the place of trial thus remain unsettled for an unnecessarily long time to accommodate double judicial consideration, but, as this case shows, the result of a disagreement between the courts involved is that the litigation cannot go forward at all unless this Court resolves the matter. Surely a seemly system of judicial remedies, especially appellate judicial remedies, regarding controverted transfer provisions of the United States Code should encourage, not discourage, quick settlement of questions of transfer and should preclude two Courts of Appeals from creating, through their disagreement in the same case, an impasse to the litigation which only this Court can remove. Section 1404 (a) was meant to serve the ends of "convenience" and "justice" in the trial of actions. It perverts those ends to permit a question arising under § 1404 (a), as here, to be litigated, in turn, before a District Court and Court of Appeals in one Circuit, and a District Court and Court of Appeals in another Circuit, one thousand miles distant, thereby delaying trial for a year and a half, only to have the result of all that preliminary litigation be that trial may not go forward at all until this Court shall settle the question of where it shall go forward, after at least another year's delay.

We are not vouchsafed claims of reason or of the due administration of justice that require the duplication of

appellate remedies approved by the Court in this case. Why is not a single judicial appellate remedy in a Court of Appeals entirely adequate for one aggrieved by a transfer? Once the Court of Appeals for the Fifth Circuit had decided, after due consideration, that the proper meaning of § 1404 (a) included Illinois as a place where the action "might have been brought," this should have ended the matter, except of course for this Court's power of review of that decision through the writ of certiorari, a power which we declined to exercise in this case. Nor does such a view of right and wise judicial administration depend upon the nature of the procedural or even jurisdictional issue in controversy. Technically, *res judicata* controls even a decision on a matter of true jurisdiction. "We see no reason why a court, in the absence of an allegation of fraud in obtaining the judgment, should examine again the question whether the court making the earlier determination on an actual contest over jurisdiction between the parties, did have jurisdiction of the subject matter of the litigation." *Stoll* v. *Gottlieb*, 305 U. S. 165, at 172. See also *Baldwin* v. *Traveling Men's Assn., supra*, 283 U. S. 522. Surely, a prior decision of a federal court on the unfundamental issue of venue ought to receive similar respect from a coordinate federal court when the parties and the facts are the same. The question is of the appropriate scheme of judicial remedies for enforcing rights under a federal remedial statute aimed at enhancing the fair administration of justice in the federal courts. It is not consonant with reason to permit a duplicate appellate procedure for questions under this statute, thereby forestalling final decision on a pre-trial matter which ought to be decided as expeditiously as possible, causing wasteful delay and expense, and thus depriving the statutory motion to transfer of effectiveness in achieving the ends of "convenience" and "justice" for which it was created.

Mr. Justice Frankfurter, whom Mr. Justice Harlan and Mr. Justice Brennan join, dissenting.*

The problem in this case is of important concern to the effective administration of justice in the federal courts. At issue is the scope of 28 U. S. C. § 1404 (a), providing for the transfer of litigation from one Federal District Court to another. The main federal venue statutes necessarily deal with classes of cases, without regard to the occasional situation in which a normally appropriate venue may operate vexatiously. Section 1404 (a) was devised to avoid needless hardship and even miscarriage of justice by empowering district judges to recognize special circumstances calling for special relief. It provides that an action, although begun in a place falling within the normally applicable venue rubric may be sent by the District Court to go forward in another district much more appropriate when judged by the criteria of judicial justice.

The terms of § 1404 (a) are as follows:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The part of § 1404 (a) the meaning of which is at issue here is its last phrase, "any other district or division where it [the action] might have been brought." The significance of this phrase is this: even though a place be found to be an overwhelmingly more appropriate forum from the standpoint of "convenience" and "justice," the litigation may not be sent to go forward there unless it is a

*[This opinion applies only to No. 26, *Sullivan* v. *Behimer.* For opinion of Mr. Justice Frankfurter, joined by Mr. Justice Harlan and Mr. Justice Brennan, in No. 25, *Hoffman* v. *Blaski,* see *ante,* p. 345.]

place where the action "might have been brought." Upon the scope to be given this phrase thus depends almost entirely the effectiveness of § 1404 (a) to insure an appropriate place of trial, when the action is begun in an oppressive forum.

One would have to be singularly unmindful of the treachery and versatility of our language to deny that as a mere matter of English the words "where it might have been brought" may carry more than one meaning. For example, under Rule 3 of the Federal Rules of Civil Procedure, civil actions are "commenced" by filing a complaint with the court. As a matter of English there is no reason why "commenced" so used should not be thought to be synonymous with "brought" as used in § 1404 (a), so that an action "might have been brought" in any district where a complaint might have been filed, or perhaps only in districts with jurisdiction over the subject matter of the litigation. As a matter of English alone, the phrase might just as well be thought to refer either to those places where the defendant "might have been" served with process, or to those places where the action "might have been brought" in light of the applicable venue provision, for those provisions speak generally of where actions "may be brought." Or the phrase may be thought as a matter of English alone to refer to those places where the action "might have been brought" in light of the applicable statute of limitations, or other provisions preventing a court from reaching the merits of the litigation. On the face of its words alone, the phrase may refer to any one of these considerations, i. e., venue, amenability to service, or period of limitations, to all of them or to none of them, or to others as well.[1] And to

---

[1] See, e. g., Felchlin v. American Smelting & Refining Co., 136 F. Supp. 577 (D. C. S. D. Calif. 1955) (transfer denied on defendant's motion because plaintiff was an executor not qualified in transferee

the extent that these are matters which may or may not be raised at the defendant's election, the English of the phrase surely does not tell whether the defendant's actual or potential waiver or failure to raise such objections is to be taken into account in determining whether a district is one in which the action "might have been brought," or whether the phrase refers only to those districts where the plaintiff "might have brought" the action even over a timely objection on the part of the defendant, that is, where he had "a right" to bring it.

The particular problem in the present case has been a relatively commonplace one in the application of § 1404 (a), and it demonstrates the failure of the words of the section, considered merely as words, to define with precision those places where an action "might have been brought." The problem here is this. Action was brought by plaintiff in district A, a proper venue under the applicable venue statute. Defendant objected and moved for transfer to district B, submitting that in the interests of "convenience" and "justice" to all concerned the action should go forward there instead of in district A. District B, however, is one in which, had the complaint been

court); *Masterpiece Products, Inc.*, v. *United Artists Corp.*, 90 F. Supp. 750 (D. C. E. D. Pa. 1950) (transfer denied on defendant's motion because, had the action originally been brought in the transferee court, the alignment of parties would have been different, there being one involuntary party, thereby destroying complete diversity of citizenship); *Lucas* v. *New York Central R. Co.*, 88 F. Supp. 536 (D. C. S. D. N. Y. 1950) (transfer denied on defendant's motion because defendant's corporate status would have destroyed diversity of citizenship had the action been brought in the transferee court). In all of these cases transfer was denied because the transferee court was deemed not to be one where the action "might have been brought." See also *Arvidson* v. *Reynolds Metals Co.*, 107 F. Supp. 51 (D. C. W. D. Wash. 1952) (denying the defendant's motion for transfer in part because the action was a local one, and state courts in the transferee district would not have taken jurisdiction over it).

filed there, the plaintiff would have been unable without the defendant's consent to serve him with process. In addition, the defendant in District B, had the complaint been filed there, would have had an objection to the venue, under the applicable venue statute. In moving for transfer to B, the defendant stipulates to waiving all objections to venue there and to submitting his person to the jurisdiction of District Court B, should transfer be ordered. The District Court in A agrees that B, not A, is the appropriate place for trial and is disposed to transfer the action there, for in light of the defendant's stipulation there is no way in which the plaintiff can be prejudiced by the lack of venue in B or the impossibility, as an original matter, of serving defendant there. Is B a place where the action "might have been brought" so that the transfer can be effected? The Court finds it "plain," from the words of the phrase themselves, that B is not such a place, and that, for it, is the end of the matter.

We would all agree that B would be a place where the action "might have been brought" if it were a place of statutory venue, if the defendant had always been amenable to process there, and if B had no other special characteristics whereby the defendant could prevent consideration there of the merits of the cause of action. Almost every statute has a core of indisputable application, and this statute plainly applies to permit transfer to a place where there could never have been any objection to the maintenance of the action. But is it clear, as the Court would have it, that, as a mere matter of English, because potential objections peculiar to the forum would have been present in B, it is not to be deemed a place where the action "might have been brought," although defendant not only might but is prepared to waive, as he effectively may, such objections?

I submit that it is not clear from the words themselves, and the experience in the lower courts gives compelling proof of it. At least 28 District Courts, located in all parts of the Nation, have had to give concrete meaning to the set of words in controversy. These are the judges who are, to use a familiar but appropriate phrase, on the firing line, who are in much more intimate, continuous touch with the needs for the effective functioning of the federal judicial system at the trial level than is this Court. They have not found the last phrase of § 1404 (a) unambiguous. There has been anything but the substantial uniformity of views to be expected in the application of a clear and unambiguous direction. There have been severe differences with regard to whether § 1404 (a) is ever available as a remedy to a plaintiff forced into an inconvenient forum, and if so under what conditions.[2] With regard to defendants' motions to transfer, it has been held that "brought" in § 1404 (a) is synonymous with "commenced" in Rule 3 so that transfer may be made to virtually any district dictated by "convenience" and "justice."[3] It has been held that the phrase is to be applied as if it read "where it might have been brought *now*," thus giving full effect to a waiver of objections by defendant

[2] See, e. g., Dufek v. Roux Distrib. Co., 125 F. Supp. 716 (D. C. S. D. N. Y. 1954); Barnhart v. Rogers Producing Co., 86 F. Supp. 595 (D. C. N. D. Ohio 1949); Troy v. Poorvu, 132 F. Supp. 864 (D. C. Mass. 1955); United States v. Reid, 104 F. Supp. 260 (D. C. E. D. Ark. 1952); Otto v. Hirl, 89 F. Supp. 72 (D. C. S. D. Iowa 1952); McGee v. Southern Pacific Co., 151 F. Supp. 338 (D. C. S. D. N. Y. 1957); Rogers v. Halford, 107 F. Supp. 295 (D. C. E. D. Wisc. 1952); Herzog v. Central Steel Tube Co., 98 F. Supp. 607 (D. C. S. D. Iowa 1951); Mitchell v. Gundlach, 136 F. Supp. 169 (D. C. Md. 1955); McCarley v. Foster-Milburn Co., 89 F. Supp. 643 (D. C. W. D. N. Y. 1950).

[3] Otto v. Hirl, 89 F. Supp. 72, 74 (D. C. S. D. Iowa 1952).

in moving for transfer.[4] It has been said, on the other hand, that "[s]ection 1404 (a) . . . contemplates statutory venue and not consent venue." [5]

With regard to the particular problem in this case, which has arisen most often, a majority of the District Courts which have considered the problem have ruled against the Court's "plain" meaning of the statute. At least seven District Courts have ruled that, because of the defendant's consent to have the action go forward there, a district is one where the action "might have been brought," even though it is a place where the defendant might either have objected to the venue, or avoided process, or both had the action been brought there originally.[6] At least three District Courts have held or implied to the contrary, that the defendant's consent is not relevant, and that such a district cannot be one where the action "might have been brought." [7] Two others have simply denied motions by the defendant on the ground that the transferee court was not one where the action "might have been brought," without discussing whether

---

[4] *Cain* v. *Bowater's Newfoundland Pulp & Paper Mills, Ltd.,* 127 F. Supp. 949, 950 (D. C. E. D. Pa. 1954).

[5] *Johnson* v. *Harris,* 112 F. Supp. 338, 341 (D. C. E. D. Tenn. 1953).

[6] *Hill* v. *Upper Mississippi Towing Corp.,* 141 F. Supp. 692 (D. C. Minn. 1956); *McGee* v. *Southern Pacific Co.,* 151 F. Supp. 338 (D. C. S. D. N. Y. 1957); *Welch* v. *Esso Shipping Co.,* 112 F. Supp. 611 (D. C. S. D. N. Y. 1953); *Mire* v. *Esso Shipping Co.,* 112 F. Supp. 612 (D. C. S. D. N. Y. 1953); *Cain* v. *Bowater's Newfoundland Pulp & Paper Mills, Ltd.,* 127 F. Supp. 949 (D. C. E. D. Pa. 1954); *Anthony* v. *RKO Radio Pictures,* 103 F. Supp. 56 (D. C. S. D. N. Y. 1951); *Blaski* v. *Howell* (D. C. N. D. Ill., March 14, 1958).

[7] *General Electric Co.* v. *Central Transit Warehouse Co.,* 127 F. Supp. 817 (D. C. W. D. Mo. 1955); *Tivoli Realty* v. *Paramount Pictures,* 89 F. Supp. 278 (D. C. Del. 1950); *Felchlin* v. *American Smelting & Refining Co.,* 136 F. Supp. 577 (D. C. S. D. Calif. 1955). See also *Johnson* v. *Harris,* 112 F. Supp. 338 (D. C. E. D. Tenn. 1953) (dictum).

in moving for transfer the defendant had consented to go forward in the transferee court, or what the effect of that consent would be.[8] Two District Courts have granted the defendants' motion to transfer, making the matter turn on the presence of a number of defendants and the fact that some of them were suable as of right in the transferee court.[9] Two others have found the amenability of the defendant to service of process in the place to which transfer is proposed to be wholly irrelevant to whether the action "might have been brought" there, and have ordered transfer to such a place on the plaintiff's motion even though the defendant did not consent.[10] It simply cannot be said in the face of this experience that the words of the statute are so compellingly precise, so unambiguous, that § 1404 (a) as a matter of "plain words" does not apply in the present case.

The experience in the Courts of Appeals is also revealing. Of the six cases where defendants have moved for transfer, in only two has it been held that the defendant's consent to the transfer is not relevant in determining whether the place to which transfer is proposed is a place where the action "might have been brought," and these are the two decisions of the Seventh Circuit now before us. *Blaski* v. *Hoffman,* 260 F. 2d 317 (C. A. 7th Cir. 1958); *Behimer* v. *Sullivan,* 261 F. 2d 467 (C. A. 7th Cir. 1958).

---

[8] *Silbert* v. *Nu-Car Carriers,* 111 F. Supp. 357 (D. C. S. D. N. Y. 1953); *Hampton Theaters, Inc.,* v. *Paramount Film Distributing Corp.,* 90 F. Supp. 645 (D. C. D. C. 1950). See also *Arvidson* v. *Reynolds Metals Co.,* 107 F. Supp. 51 (D. C. W. D. Wash. 1952) (denying the defendants' motion to transfer in part because the plaintiff would not have been amenable to process in the transferee court).

[9] *Ferguson* v. *Ford Motor Co.,* 89 F. Supp. 45 (D. C. S. D. N. Y. 1950); *Glasfloss Corp.* v. *Owens-Corning Fiberglas Corp.,* 90 F. Supp. 967 (D. C. S. D. N. Y. 1950).

[10] *McCarley* v. *Foster-Milburn Co.,* 89 F. Supp. 643 (D. C. W. D. N. Y. 1950); *Troy* v. *Poorvu,* 132 F. Supp. 864 (D. C. Mass. 1955).

The Third Circuit has ruled in favor of transfer on the defendant's motion to a place where the defendant might have objected to the venue, *Paramount Pictures* v. *Rodney,* 186 F. 2d 111 (C. A. 3d Cir. 1951). The First and Second Circuits have ruled in favor of transfer on defendant's motion to a place where the defendant could not have been served with process, *Torres* v. *Walsh,* 221 F. 2d 319 (C. A. 2d Cir. 1955); *In re Josephson,* 218 F. 2d 174 (C. A. 1st Cir. 1954). And the Second and Fifth Circuits have ruled in favor of transfer on defendant's motion to a place where there was neither statutory venue nor a chance to serve the defendant, *Anthony* v. *Kaufman,* 193 F. 2d 85 (C. A. 2d Cir. 1951); *Ex parte Blaski,* 245 F. 2d 737 (C. A. 5th Cir. 1957). All these courts have considered the meaning of the phrase in detail and have held that the place to which transfer was proposed was a place where the action "might have been brought." Thus the Court's view of the meaning of § 1404 (a) is contrary to the rulings of every Court of Appeals but one which has considered the problem, and is contrary to the view of more than half the District Courts as well. Yet the Court maintains that the statute unambiguously means what its says it does.

Surely, the Court creates its own verbal prison in holding that "the plain words" of § 1404 (a) dictate that transfer may not be made in this case although transfer concededly was in the interest of "convenience" and "justice." Moreover, the Court, while finding the statutory words "plain," decides the case by applying, not the statutory language, but a formula of words found nowhere in the statute, namely, whether plaintiffs had "a right to bring these actions in the respective transferee districts." This is the Court's language, not that of Congress. Although it is of course a grammatically plausible interpretation of the phrase "where it might have been brought," it has been, I submit, established that it is not

by any means the only plausible interpretation. In fact, the Court's rephrasing, as distinguished from Congress' phrasing, gives the narrowest possible scope to the operation of § 1404 (a). There can be expected to be very few, if any, alternative forums in a given case where the plaintiff has a "right" to sue, considering that that means places of unobjectionable venue where the defendant is amenable to service of process and where there are no other impediments such as a statute of limitations which the defendant can rely on to defeat the action.

This case, then, cannot be decided, and is not decided, by the short way of a mechanical application of Congress' words to the situation. Indeed, it would be extraordinary if a case which could be so decided were deemed worthy of this Court's attention twelve years after the applicable statute was enacted. To conclude, as the Court does, that the transferee court is inexorably designated by the inherent force of the words "where it might have been brought" is to state a conclusion that conceals the process by which the meaning is, as a matter of choice, extracted from the words.

The problem in this case is one of resolving an ambiguity by all the considerations relevant to resolving an ambiguity concerning the conduct of litigation, and more particularly the considerations that are relevant to resolving an ambiguous direction for the fair conduct of litigation in the federal judicial system At the crux of the business, as I see it, is the realization that we are concerned here not with a question of a limitation upon the power of a federal court but with the place in which that court may exercise its power. We are dealing, that is, not with the jurisdiction of the federal courts, which is beyond the power of litigants to confer, but with the locality of a lawsuit, the rules regulating which are designed mainly for the convenience of the litigants. "[T]he locality of a law suit—the place where judicial authority may be

exercised—though defined by legislation relates to the convenience of litigants and as such is subject to their disposition. . . . [A venue statute] 'merely accords to the defendant a personal privilege respecting the venue, or place of suit, which he may assert, or may waive, at his election.' *Commercial Ins. Co.* v. *Stone Co.*, 278 U. S. 177, 179." *Neirbo Co.* v. *Bethlehem Shipbuilding Corp.*, 308 U. S. 165, 168. And in that case the Court was merely reiterating considerations already forcefully set out in *General Investment Co.* v. *Lake Shore R. Co.*, 260 U. S. 261, and *Lee* v. *Chesapeake & Ohio R. Co.*, 260 U. S. 653. This basic difference "between the court's power and the litigant's convenience is historic in the federal courts." 308 U. S., at 168.

Applying these considerations to a problem under a different statute but relevant to the present one, namely, whether removal from a state court to a federal court might be had upon the motion of the defendant when the federal court was one where the venue would have been subject to objection, had the action originally been brought there, this Court, speaking unanimously through Mr. Justice Van Devanter, discriminatingly reminded that "[i]t therefore cannot be affirmed broadly that this suit could not have been brought . . . [in the federal court] but only that it could not have been brought and maintained in that court over a seasonable objection by the company to being sued there." This analysis has striking application to the present problem under § 1404 (a), and it is also relevant here that the Court sanctioned removal in that case to a federal court with no statutory venue, partly because "there could be no purpose in extending to removals the personal privilege accorded to defendants by [the venue statutes] . . . since removals are had only at the instance of defendants." *General Investment Co.* v. *Lake Shore R. Co.*, 260 U. S. 261, 273, 275. See also, to the same effect, *Lee* v. *Chesapeake & Ohio R. Co.*, 260

U. S. 653, overruling *Ex parte Wisner,* 203 U. S. 449, and qualifying *In re Moore,* 209 U. S. 490. The rule that statutory venue rules governing the place of trial do not affect the power of a federal court to entertain an action, or of the plaintiff to bring it, but only afford the defendant a privilege to object to the place chosen, is now enacted as part of the Judicial Code. 28 U. S. C. § 1406 (b). And of course it needs no discussion that a defendant is always free voluntarily to submit his person to the jurisdiction of a federal court.

In light of the nature of rules governing the place of trial in the federal system, as thus expounded and codified, as distinguished from limitation upon the power of the federal courts to adjudicate, what are the competing considerations here? The transferee court in this case plainly had and has jurisdiction to adjudicate this action with the defendant's acquiescence. As the defendant, whose privilege it is to object to the place of trial, has moved for transfer, and has acquiesced to going forward with the litigation in the transferee court, it would appear presumptively, unless there are strong considerations otherwise, that there is no impediment to effecting the transfer so long as "convenience" and "justice" dictate that it be made. It does not counsel otherwise that here the plaintiff is to be sent to a venue to which he objects, whereas ordinarily, when the defendant waives his privilege to object to the place of trial, it is to acquiesce in the plaintiff's choice of forum. This would be a powerful argument if, under § 1404 (a), a transfer were to be made whenever requested by the defendant. Such is not the case, and this bears emphasis. A transfer can be made under § 1404 (a) to a place where the action "might have been brought" only when "convenience" and "justice" so dicate, not whenever the defendant so moves. A legitimate objection by the plaintiff to proceeding in the transferee forum will presumably be reflected in a decision that

the interest of justice does not require the transfer, and so it becomes irrelevant that the proposed place of transfer is deemed one where the action "might have been brought." If the plaintiff's objection to proceedings in the transferee court is not consonant with the interests of justice, a good reason is wanting why the transfer should not be made.

On the other hand, the Court's view restricts transfer, when concededly warranted in the interest of justice, to protect no legitimate interest on the part of the plaintiff. And by making transfer turn on whether the defendant could have been served with process in the transferee district on the day the action was brought, the Court's view may create difficult problems in ascertaining that fact, especially in the case of non-corporate defendants. These are problems which have no conceivable relation to the proper administration of a provision meant to assure the most convenient and just place for trial.

Nor is it necessary to reach the Court's result in order to preserve an appropriate meaning for the phrase "where it might have been brought." I fully agree that the final words of § 1404 (a) are words of limitation upon the scope of the provision. But to hold as I would that a district is one where the action "might have been brought" when the defendant consents to going forward with the litigation there, does not remove the quality of those words as a limitation. The words compel the defendant in effect to waive any objections to going forward in the transferee district which he might have had if the action had been brought there, in order to obtain a transfer. The words therefore insure that transfer will not be a device for doing the plaintiff out of any forum in which to proceed, no matter how inconvenient. The words in any case, plainly limit the plaintiff's right to seek a transfer when the defendant does not consent to the change of venue. Moreover, the words may serve to prevent transfer to

courts with a lack of federal power to adjudicate the matter of the dispute which the defendant cannot confer with his consent.[11]   In light of the fact that the venue statutes in Title 28, U. S. C., are phrased in terms of where the action "may be brought," or in some cases where it "shall" or "must" be brought,[12] the most obvious limiting significance of the phrase "where it might have been brought" is that it refers to places where, under the venue provisions, the action, "may," "shall," or "must" be brought assuming the existence of federal jurisdiction.[13]   In the meaning of federal venue provisions as expounded by this Court, and by Congress in § 1406 (b), these, as has been said, are not only places where, under the applicable provision, no objection to the venue is available to the defendant.   They are also places where the defendant consents to be sued.

The relevant legislative history of § 1404 (a) is found in the statement in the Reviser's Notes, accompanying the 1948 Judicial Code, that § 1404 (a) "was drafted in accordance with the doctrine of forum non conveniens." [14] Under that doctrine, the remedy for an inconvenient

---

[11] See cases cited in note 1, *supra*.

[12] See 28 U. S. C. §§ 1391, 1392 (a) and (b), 1393 (a) and (b), 1396–1399, 1400 (b), 1401 and 1403.

[13] See Chief Judge Magruder's opinion for the Court of Appeals for the First Circuit in *In re Josephson*, 218 F. 2d 174, 184.

[14] The whole of the statement in the Reviser's Note dealing with subsection (a) of § 1404 is as follows:

"Subsection (a) was drafted in accordance with the doctrine of forum non conveniens, permitting transfer to a more convenient forum, even though the venue is proper.   As an example of the need of such a provision, see *Baltimore & Ohio R. Co.* v. *Kepner*, . . . 314 U. S. 44, . . . which was prosecuted under the Federal Employer's Liability Act in New York, although the accident occurred and the employee resided in Ohio.   The new subsection requires the court to determine that the transfer is necessary for convenience of the parties and witnesses, and further, that it is in the interest of justice to do so."

forum was not to transfer the action, but to dismiss it. In *Gulf Oil Corp.* v. *Gilbert,* 330 U. S. 501, 506–507, we held that "[i]n all cases in which the doctrine of *forum non conveniens* comes into play, it presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes criteria for choice between them." It is entirely "in accordance" with this view of the doctrine of *forum non conveniens* to hold that transfer may be made at the instance of the defendant, regardless of the plaintiff's right as an original matter to sue him in the transferee court, so long as the defendant stipulates to going forward with the litigation there. Indeed, to hold otherwise as the Court does is to limit § 1404 (a) to a much narrower operation than the nonstatutory doctrine of *forum non conveniens.* Investigation has disclosed several *forum non conveniens* cases, one of them in this Court, where dismissal of the action on the defendant's motion was made upon the condition of the defendant's voluntary submission to the jurisdiction of another more convenient forum when that forum was not available to the plaintiff as of right over the defendant's objection. See *Canada Malting Co.* v. *Paterson Steamships, Ltd.,* 49 F. 2d 802, 804, affirmed, 285 U. S. 413, 424; *Giatilis* v. *The Darnie,* 171 F. Supp. 751, 754; *Bulkley, Dunton Paper Co.* v. *The Rio Salado,* 67 F. Supp. 115, 116; *Libby, McNeill & Libby* v. *Bristol City Line of Steamships,* 41 F. Supp. 386, 389; *The City of Agra,* 35 F. Supp. 351; *Strassburger* v. *Singer Mfg. Co.,* 263 App. Div. 518, 33 N. Y. Supp. 2d 424; *Wendel* v. *Hoffman,* 258 App. Div. 1084, 18 N. Y. Supp. 2d 96. See also *Cerro de Pasco Copper Corp.* v. *Knut Knutsen,* 187 F. 2d 990, and *Swift & Co.* v. *Compania Caribe,* 339 U. S. 684, 697–698: "it was improper under the circumstances here shown to remit a United States citizen to the courts of a foreign country without assuring the citizen that respondents would appear in those courts and that security would be given

equal to what had been obtained by attachment in the District Court. The power of the District Court to give a libellant such assurance is shown by *Canada Malting Co. v. Paterson Steamships, Ltd.,* 285 U. S. 413, 424 [*supra*]." In view of the familiarity of this device of dismissing for *forum non conveniens* when as of right no other forum was available to plaintiff, upon the defendant's agreement to appear in the more convenient forum, it is almost necessary to suppose, in light of the Reviser's description of § 1404 (a) as "in accordance with the doctrine of forum non conveniens," that transfer under § 1404 (a) may likewise be made where the defendant consents to going forward with the case in the transferee court.

The only consideration of the Court not resting on the "plain meaning" of § 1404 (a) is that it would constitute "gross discrimination" to permit transfer to be made with the defendant's consent and over the plaintiff's objection to a district to which the plaintiff could not similarly obtain transfer over the defendant's objection. To speak of such a situation as regards this statute as "discrimination" is a sterile use of the concept. Mutuality is not an empty or abstract doctrine; it summarizes the reality of fair dealing between litigants. Transfer cannot be made under this statute unless it is found to be in the interest of "convenience" and in the interest of "justice." Whether a party is in any sense being "discriminated" against through a transfer is certainly relevant to whether the interest of justice is being served. If the interest of justice is being served, as it must be for a transfer to be made, how can it be said that there is "discrimination" in any meaningful sense? Moreover, the transfer provision cannot be viewed in isolation in finding "discrimination." It, after all, operates to temper only to a slight degree the enormous "discrimination" inherent in our system of litigation, whereby the sole choice of forum, from among those where service is possible and venue unobjectionable,

is placed with the plaintiff. The plaintiff may choose from among these forums at will; under § 1404 (a) the defendant must satisfy a very substantial burden of demonstrating where "justice" and "convenience" lie, in order to have his objection to a forum of hardship, in the particular situation, respected.

In summary, then, the "plain meaning" of § 1404 (a) does not conclude the present case against the transfer, for the statute, as applied in this case, is not "plain" in meaning one way or another, but contains ambiguities which must be resolved by considerations relevant to the problem with which the statute deals. Moreover, the most obvious significance for the set of words here in question, considered as self-contained words, is that they have regard for the limitations contained in the regular statutory rules of venue. Those rules, it is beyond dispute, take into account the consent of the defendant to proceed in the forum, even if it is not a forum designated by statute. And the doctrine of *forum non conveniens* "in accordance with" which § 1404 (a) was drafted, also took into account the defendant's consent to proceed in another forum to which he was not obligated to submit. Nor can a decision against transfer be rested upon notions of "discrimination" or of unfairness to the plaintiff in wrenching him out of the forum of his choice to go forward in a place to which he objects. In the proper administration of § 1404 (a), such consequences cannot survive the necessity to find transfer to be in the interests of "convenience" and "justice," before it can be made. On the other hand, to restrict transfer as the Court does to those very few places where the defendant was originally amenable to process and could have had no objection to the venue is drastically to restrict the number of situations in which § 1404 (a) may serve the interests of justice by relieving the parties from a vexatious forum. And it is to restrict the operation of the section capriciously, for

such a drastic limitation is not counseled by any legitimate interest of the plaintiff, or by any interest of the federal courts in their jurisdiction. The defendant's interest of course is not involved because he is the movant for transfer.

The essence of this case is to give fair scope to the role of § 1404 (a) in our system of venue regulations, that is, a system whereby litigation may be brought in only a limited number of federal districts, which are chosen generally upon the basis of presumed convenience. Two extremes are possible in the administration of such a system, duly mindful of the fact that in our jurisprudence venue does not touch the power of the court. (1) All venue may be determined solely by rigid rules, which the defendant may invoke and which work for convenience in the generality of cases. In such an extreme situation there would be no means of responding to the special circumstances of particular cases when the rigid venue rules are inappropriate. (2) At the other extreme there may be no rigid venue provisions, but all venue may be determined, upon the defendant's objection to the plaintiff's choice of forum, by a finding of fact in each case of what is the most convenient forum from the point of view of the parties and the court. The element of undesirability in the second extreme is that it involves too much preliminary litigation; it is desirable in that it makes venue responsive to actual convenience. The first extreme is undesirable for according too little, in fact nothing, to actual convenience when the case is a special one; it is desirable in that it does away with preliminary litigation.

If anything is plain, from its history and from its words, it is that § 1404 (a) means to afford a balance, a compromise, between these two extremes. It is in this spirit that its provisions must be read. In the ordinary course the regular venue rules are to prevail, with no preliminary litigation to determine the actual convenience. But the

statute means to allow for cases where the ordinary rules are found to work a great hardship; there, actual convenience is to prevail. We should therefore not, as the Court has done, impose limitations upon the operation of § 1404 (a) which have no relation to ordinary considerations governing the place of trial in the federal system and which arbitrarily prevent actual convenience from determining the place of trial. The limitations upon the section should only be those which recognize legitimate countervailing considerations to the free reign of actual convenience, namely limitations regarding the power of the federal courts to adjudicate, and limitation recognizing the historic privilege of the defendant, should he choose to exercise it, to object to the place of trial unless it is affirmatively designated by the venue statute.

It may be urged in answer to this analysis that if transfer is available as a matter of "convenience" and "justice" in every case in which the defendant consents to going forward in the transferee court, § 1404 (a) will entail burdensome preliminary litigation and may, if improperly administered, prove vexatious to plaintiffs. Thus, even arbitrary limitations, such as the Court imposes, may be said to be warranted. In effect this argument against transfer in situations like the present implies distrust in the ability and character of district judges to hold the balance even, that is, to dispose quickly of frivolous contentions and to prevent transfer from proving unduly prejudicial to plaintiffs while according it its proper scope to deal with cases of real inconvenience. "Such apprehension implies a lack of discipline and of disinterestedness on the part of the lower courts, hardly a worthy or wise basis for fashioning rules of procedure. It reflects an attitude against which we were warned by Mr. Justice Holmes, speaking for the whole Court, likewise in regard to a question of procedure: 'Universal distrust creates universal incompe-

tence.' *Graham* v. *United States*, 231 U. S. 474, 480."
*Kerotest Mfg. Co.* v. *C-O-Two Co.*, 342 U. S. 180, 185.
As in that case, doubts here should be resolved in favor
of the competence of the District Courts wisely to admin-
ister § 1404 (a). Whatever salutary effect that section is
to have must in any event depend upon due appreciation
by district judges of the relevant considerations involved
in ordering a transfer. Nothing is to be gained by parcel-
ing out the areas of their discretion mechanically, making
distinctions which have no relevance to the manner in
which venue provisions are ordinarily administered in the
federal courts. I would therefore permit considerations
of "convenience" and "justice" to be operative whenever
the defendant consents to going forward in the transferee
court on the same terms on which he was sued in the
original forum. Against a rare abuse, there will always
be available the corrective supervisory power of the
Courts of Appeals, and ultimately of this Court.