NOTE: This order is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**IN RE EMC CORP., DECHO CORP., IOMEGA CORP., AND CARBONITE, INC.,**
*Petitioners.*

———————————

Miscellaneous Docket No. 142

———————————

On Petition for Writ of Mandamus to the United States District Court for the Eastern District of Texas in case no. 10-CV-0435, Magistrate Judge Amos L. Mazzant.

———————————

## ON PETITION

———————————

Before RADER, *Chief Judge*, DYK, and MOORE, *Circuit Judges.*

DYK, *Circuit Judge.*

## O R D E R

This is petitioners EMC Corporation, Decho Corporation, Iomega Corporation and Carbonite Corporation's second request for a writ of mandamus in this case; as we noted before, this matter arose out of a single complaint filed by respondent Oasis Research LLC ("Oasis") charging a total of eighteen companies with offering online

backup and storage for home or business computer users that allegedly infringed its patents. *In re EMC Corp.*, 677 F.3d 1351 (Fed. Cir. 2012). The United States District Court for the Eastern District of Texas denied EMC and Carbonite's requests to sever the claims against them in separate motions filed shortly after the complaint. In its view, Rule 20 of the Federal Rules of Civil Procedure—which governs joinder of claims arising out of the same transaction or occurrence—was met because the defendants' accused services and products were "not dramatically different." *Oasis Research LLC v. ADrive LLC*, No. 4:10-CV-435, 2011 WL 3099885, at *2 (E.D. Tex. May 23, 2011). Given its conclusion that all eighteen claims belonged in the same action, the district court also denied EMC and Carbonite's motions to transfer venue to the United States District Courts for the Districts of Utah and Massachusetts, respectively, on the ground that transfer would divide a single action into several "different lawsuits scattered across the country." *Id.* at *4.

On petition this court reversed. We held that claims against independent defendants cannot be joined under the transaction-or-occurrence test "unless the facts underlying the claim of infringement asserted against each defendant share an aggregate of operative facts." *EMC*, 677 F.3d at 1359. Because application of the improper joinder test could preclude a proper transfer analysis and prevent the defendants from having a "meaningful opportunity to present individualized defenses on issues such as infringement, willfulness, and damages," we granted the petition to the limited extent that we directed the district court to apply the correct test. *Id.* at 1354-55. We did not express any opinion on the issue of transfer of venue.

After our opinion, the district court severed the matter into four separate cases, including creating a separate

action against Carbonite and a separate action against EMC, Decho, and Iomega, consolidated the cases for pretrial proceedings, and again denied the petitioners' motions for transfer in separate orders. In its denial of transfer orders, the district court concluded that in each case the petitioners had failed to show that the transferee venues were clearly more convenient. In so finding, the district court acknowledged that at least one party in each case had maintained significant operations relating to an accused product in the transferee venues and that the petitioners had identified five potential witnesses who reside in Utah and two potential witnesses who reside in Massachusetts. However, the court concluded that the petitioners had not met their burden of demonstrating the need for transfer, particularly in light of the fact that some potential witnesses were located in or closer to the Eastern District of Texas, and several witnesses and sources of proof were located in various other states, including New York, Virginia, Colorado, and Washington, D.C. The district court, moreover, concluded in each case that judicial economy weighed heavily against transfer. In that regard, the district court noted that if it were to transfer the cases other courts "would have to spend significant resources to familiarize [themselves] with the patents, prosecution history, claim construction, and other issues in th[ese] case[s]." Taking particular issue with that analysis, the petitioners now seek a writ of mandamus with regard to those orders.

The petitioners' request for a writ directing the district court to transfer these cases runs up against a highly deferential standard of review. The question before us on mandamus is not whether the transferee venues are more convenient and fair; nor is it even whether in our view it was an abuse of discretion for the trial court to have denied transfer, which is the applicable standard of review on direct appeal. *See In re TS Tech USA Corp.,*

551 F.3d 1315, 1319 (Fed. Cir. 2008). Instead, the question is whether the denial of transfer was such a "'clear' abuse of discretion" that refusing transfer would produce a "patently erroneous result." *Id.* (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir. 2008) (en banc)). Under this highly deferential standard, we must leave the district court's decision undisturbed unless it is clear "that the facts and circumstances are without any basis for a judgment of discretion." *Volkswagen*, 545 F.3d at 317 n.7 (quoting *McGraw-Edison Co. v. Van Pelt*, 350 F.2d 361, 363 (8th Cir. 1965)). Here, we cannot say that standard has been met.

This case is a prime example of the importance of addressing motions to transfer at the outset of litigation. As the Fifth Circuit stated in *In re Horseshoe Entm't*, "in our view disposition of [a] motion [to transfer] should have taken a top priority in the handling of this case by the . . . District Court.[1]" 337 F.3d 429, 433 (5th Cir. 2003). Congress' intent "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense," *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks omitted), may be thwarted where, as here, defendants must partake in years of litigation prior to a determination on a transfer motion.

---

[1] Similarly, the Third Circuit has concluded that "[j]udicial economy requires that [a] district court should not burden itself with the merits of the action until it is decided [whether] a transfer should be effected" and thus "it is not proper to postpone consideration of the application for transfer under § 1404(a) until discovery on the merits is completed." *McDonnell Douglas Corp. v. Polin*, 429 F.2d 30, 30 (3d Cir. 1970).

Here, the district court based its denial of the petitioners' motions to transfer venue in part on considerations of judicial economy. Petitioners protest that there is no "legitimate judicial economy factor" here because the district court's familiarity with the case arises only from its earlier error in refusing to sever and transfer claims against them. Petition at 11. Petitioners are correct that the district court could not properly rely on judicial economy involved in retaining the very cases that were the subject of the transfer motion. Motions to transfer venue are to be decided based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960) (quoting *Paramount Pictures, Inc. v. Rodney*, 186 F.2d 111, 119 (3d Cir. 1950) (Hastie, J., dissenting)). Any subsequent familiarity gained by the district court is therefore irrelevant.

It does not follow, however, that the district court's judicial economy rationale was wholly misplaced. While considerations of judicial economy arising *after* the filing of a suit do not weigh against transfer, a district court may properly consider any judicial economy benefits which would have been apparent at the time the suit was filed. For example, we have held that a district court's experience with a patent in prior litigation and the co-pendency of cases involving the same patent are permissible considerations in ruling on a motion to transfer venue. *In re Vistaprint, Ltd.*, 628 F.3d 1342, 1346-47 & n.3 (Fed. Cir. 2010). The latter consideration is applicable here. The district court could properly consider the benefits to judicial economy arising from having the same judge handle both Oasis's suits against the petitioners and Oasis's suits against other parties involving the same patents and technology as to which there was no issue of transfer. Petitioners complain that Oasis's claims against other defendants have since been dismissed, but, as discussed above, the relevant inquiry is the state of affairs

at the time "when suit was instituted." *Hoffman*, 363 U.S. at 343. Because the dismissal of Oasis's suits as to the other defendants occurred later, it is not relevant to the venue inquiry. Accordingly, the district court could properly conclude that considerations of judicial economy favored retention of the cases.

To be clear, we are not suggesting that the judicial economy of having the same judge handle multiple suits involving the same patents should dominate the transfer inquiry. After all, the MultiDistrict Litigation Procedures exist to effectuate this sort of efficiency. Here, the petitioners concede that the district court considered all of the other relevant interest factors in reaching the conclusion that the transferee venues were not clearly more convenient for trial than the Eastern District of Texas. *See* Petition at 9. The district court found not only that judicial economy weighed against transfer, but also that a significant number of identified potential sources of proof and witnesses are located outside of the transferee venues, including at least one witness in Carbonite's case and two witnesses in EMC's case who reside in the Eastern District of Texas. Given these facts, we cannot say that, on the whole, the district court's determination as to transfer was so unreasonable as to warrant mandamus relief.

Accordingly,

(1) The petition for a writ of mandamus is denied.

(2) The motion for a stay is denied as moot.

IN RE EMC CORP 7

FOR THE COURT

 /s/ Jan Horbaly
Jan Horbaly
Clerk

s19