**FAIGENBAUM MACHINERY, INC.,**
**Plaintiff,**

v.

**SCOTT & WILLIAMS, INC., Defendant.**

**BENTLEY MACHINERY, INC.,**
**Plaintiff,**

v.

**SCOTT & WILLIAMS, INC., Defendant.**

**BEAR BRAND HOSIERY CO.,**
**Plaintiff,**

v.

**SCOTT & WILLIAMS, INC., Defendant.**
**Nos. 69 Civ. 1388, 69 Civ. 5070,**
**71 Civ. 2510.**

United States District Court,
S. D. New York.

June 26, 1972.

Fitzpatrick, Cella, Harper, & Scinto, New York City, for plaintiff Faigenbaum Machinery, Inc.; Lawrence F. Scinto, New York City, Hunt, Rhodes & Mills, Greensboro, N. C., of counsel.

Burns, Lobato & Zelnick, New York City, for plaintiff Bentley Machinery, Inc.; Allan Zelnick, New York City, of counsel.

Austrian, Lance & Stewart, New York City, for plaintiff Bear Brand Hosiery Co.; David Fox, New York City, of counsel.

Shenier & O'Connor, New York City, for defendant; Henry L. Shenier, New York City, H. F. McNenny, J. F. Pearne, R. H. Dickinson, Jr., McNenny, Farrington, Pearne & Gordon, Cleveland, Ohio, of counsel.

EDWARD WEINFELD, District Judge.

These are motions by the defendant Scott & Williams, Inc., to transfer, pursuant to 28 U.S.C., section 1404(a), three actions, two of which were previously consolidated, to the Middle District of North Carolina, Greensboro Division, for the convenience of parties and witnesses and in the interest of justice. The matters normally considered on such a motion have been complicated by the circumstance that one plaintiff in the consolidated action, Faigenbaum Machinery, Inc. (hereafter Faigenbaum), consents to the transfer of its action, whereas the other, Bentley Machinery, Inc. (hereafter Bentley), not only opposes but in addition moves to sever the now consolidated actions, in effect, to vacate the order of consolidation upon a claim that radical changes have occurred since its entry to warrant such relief. Faigenbaum, although consenting to severance and the transfer of its action, also opposes the transfer of the Bentley action.

A proper understanding of the matters at issue requires a statement as to the respective actions and a chronology of events. Scott & Williams, Inc., the movant, was named as a defendant in separate actions, one brought by plaintiff Faigenbaum in April 1969, and the other by Bentley in November 1969. Each plaintiff sought a declaratory judgment of invalidity and non-infringement of two patents owned by defendant Scott & Williams, Inc.—No. RE. 26580, for methods and machines for stocking production, and the other, No. RE. 26581 for knitted products. Scott & Williams, Inc. counterclaimed in each action for contributory infringement, inducing infringement of said patents and violations of the antitrust laws. It charged Faigenbaum and Bentley and the foreign manufacturers of the machines, of which plaintiffs were the exclusive distributors in the United States, with conspiracy and restraint of trade. G. Billi & Cie., of Florence, Italy (hereafter Billi-Italy), manufactured the machines distributed by Faigenbaum, and Bentley Engineering Company, Ltd., of Leicester, England (hereafter Bentley-England), manufactured those distributed by Bentley. On June 4, 1971, a third declaratory judgment action was instituted by Bear Brand Hosiery Co. (hereafter Bear Brand) against Scott & Williams, Inc. based upon the same two patents as in the consolidated action and involving the same issues of patent validity, infringement and violation of the antitrust laws.

Bear Brand was a purchaser of machinery from Faigenbaum.

On July 9, 1971, Scott & Williams, Inc., the defendant in all three actions in this court, commenced an action in the United States District Court for the Middle District of North Carolina, Greensboro Division (hereafter the Greensboro action) against Billi-America,[1] G. Billi & Cie, and others. The complaint in that action charges infringement of plaintiff's two patents as a result of the sale of the same machinery involved in one of the two consolidated actions (Faigenbaum) and in the third action pending in this district (Bear Brand). The Greensboro action presents substantially the same issues of patent invalidity and infringement as in all three New York actions.[2] The actions in both courts also involve the same issues of conspiracy and combination in violation of the antitrust laws.

## THE FAIGENBAUM SUIT IN THIS DISTRICT

This plaintiff, a Pennsylvania corporation with its only place of business in that state, is now represented by an attorney of North Carolina, who also is the attorney for the defendants in the North Carolina suit. He requested Scott & Williams, Inc., the defendant in all three New York actions, to consent to the transfer of the Faigenbaum suit to North Carolina, and the defendant consented. A similar consent appears to have been agreed upon in the Bear Brand suit. But the transfer was not consummated. Bentley refused to consent and instead countered with its cross-motion to sever. Thus, the initial matter to be considered is Bentley's cross-motion to vacate the order of consolidation and to sever its case from Faigenbaum, so that the Faigenbaum (and Bear Brand) suits may be transferred and the Bentley action retained here for trial.

## THE CONSOLIDATION ORDER

The two reissue patents owned by Scott & Williams relate to methods and machinery for manufacturing seamless hose, specifically for closing the toe, and to the articles of hosiery so produced. Faigenbaum and Bentley commenced their respective actions for declaratory relief upon a claim that the Billi-Italy and Bentley-England method of toe closing did not infringe upon the Scott & Williams method of manufacturing hose. In an affidavit in support of their joint motion for an order of consolidation, it was stated:

"The two foreign manufacturers have sold in the United States circular knitting machines which incorporate a jointly developed method of closing the toe on the machine. The jointly developed method of toe-closing of the Billi-Italy and Bentley-England machines is substantially identical, employing the step of wrapping a yarn around the end of the tubular knit stocking to close the toe. . . .

. . . . . .

"[D]efendant served and filed two substantially identical answers and counterclaims in both actions. In each, validity of the patents was asserted and a counterclaim for contributory infringement was set forth. Both answers also contained counterclaims in identical language purporting to assert claims for relief under the anti-trust laws . . . ."

After referring to issues which were the subject of discovery, the affidavit continues:

"As might be expected, since the same patents and substantially identical accused machines are involved in both actions, the questions propounded by both plaintiffs on these issues (as well as those of defendant to both

---

1. This corporation is a subsidiary of G. Billi & Cie. and is now its United States distributor.

2. While it is true that the Scott & Williams suit in Greensboro was the latest

filed, it concerned the same relief as in the Faigenbaum suit. Following the death of its president, Faigenbaum was supplanted by Billi-America as United States distributor for the Billi-Italy machines.

plaintiffs) have been substantially alike. The principal differences are that Bentley has delved more deeply into some areas and Faigenbaum into others, but essentially, this discovery has been and will continue to be substantially duplicative."

Thus, upon Bentley's and Faigenbaum's own acknowledgment, there can be no doubt that the basic issues in their respective lawsuits are substantially identical, and what applies to one applies to the other. What is at issue between Faigenbaum, Bentley and Bear Brand on the one hand, and Scott & Williams on the other, is whether the "wrap" method of Bentley-England and Billi-Italy infringes upon the "twist" method under the reissue patents. It can hardly be disputed that the real party in interest in the Faigenbaum and Bear Brand suits is Billi-Italy,[3] the manufacturer of the machines sold by them, and in the Bentley suit, it is Bentley-England, whose product is distributed in the United States.

■ The change of circumstances urged by Bentley for the vacatur of the order of consolidation rests upon the fact that Mr. Roy Faigenbaum, President of Faigenbaum Machinery, Inc., which had been the exclusive United States importer of Billi-Italy machines, passed away in December 1970; that thereafter, Billi-Italy, unwilling to continue Faigenbaum Machinery, Inc. as its distributor, organized Billi-America as the exclusive importer of its machinery; that the original attorney for Faigenbaum withdrew, and the attorney who represents Billi-America in the Greensboro action was substituted for Faigenbaum. Accordingly, Bentley asserts that with the filing of the Greensboro action, in which Billi-Italy is a defendant, the focus of the dispute between Scott &

Williams and Billi shifted from the Faigenbaum suit in this district to the Greensboro suit; that the Faigenbaum suit was permitted to languish, whereas Bentley proceeded with its discovery; further, Bentley claims discovery has been completed in its suit on both sides, a contention which Scott & Williams sharply disputes. Thus, Bentley urges that since Faigenbaum has no real interest in the consolidated suit and it, Bentley, has been vigorous in its efforts to proceed to trial, the order of consolidation should be vacated. However, the issue is not whether one plaintiff in the consolidated action has been more vigorous than the other in prosecuting its claim. This has no bearing on the factors which led to the order of consolidation, and as already noted and as Bentley here repeats, "since the issues in each case [Faigenbaum and Bentley] were precisely the same in respect of both counts . . . your deponent proposed to counsel for Faigenbaum that a motion be filed consolidating the two actions. . . ." The identity of the issues, as they existed both before and after consolidation, remains and the fact that counsel for the defendants in the Greensboro suit presently represents Faigenbaum has not altered the essential basis upon which consolidation is granted. Accordingly, the motion for severance and to vacate the order of consolidation is denied.

■ There then remains for consideration the merits of the motion to transfer the consolidated action to the Greensboro court. There is no issue but that initially all three actions pending in this court against Scott & Williams, licensed to do business in North Carolina, could have been brought in the Greensboro court where it has its principal sales office; and so all three suits are transferable under section 1404(a).[4]

---

3. Indeed, this is conceded. The attorney representing the defendants in the Greensboro suit prepared an affidavit for filing in the New York consolidated actions, wherein he states: "The real party plaintiff in interest is Billi (Italy), which has undertaken to pay and has paid all attorneys' fees and other expenses in connection with the New York action."

4. Hoffman v. Blaski, 363 U.S. 335, 80 S. Ct. 1084, 4 L.Ed.2d 1254 (1960).

So, too, there is no issue that the action against Billi-America, Inc., a North Carolina corporation, with its only place of business in High Point, North Carolina (within the territory of the Greensboro court), and charged with patent infringement in the United States, could only have been brought in that district[5] and is not subject to transfer to this district. Thus, if all four cases are to be tried in one district or in a consolidated single trial,[6] this can only be achieved by a transfer to Greensboro.

With the basic issues in all four actions substantially the same, unless there are compelling reasons otherwise, there is no justification for separate trials in separate districts. It would be "an extravagantly wasteful and useless duplication of the time and effort of the federal courts [for] the simultaneous trial of two complex and elaborate cases involving substantially the same factual issues."[7] The desirability of avoiding conflicting rulings in patent litigation has been noted by the Panel on Multidistrict Litigation.[8]

■ Bentley, however, resists removal upon a claim that its case is ready for trial and that a transfer would delay determination of its lawsuit, a factor which is pertinent. However, Scott & Williams disputes that the case is ripe for trial, since it has not completed its discovery. A controversy also exists as to whether, under an existing court order, Scott & Williams is authorized to continue with its discovery, which, if not resolved by the parties, is to be submitted to the court for determination of the scope of the order under which the issue arises. In addition, the discovery in the *Faigenbaum* area is far from complete —this appears to be acknowledged by all parties. While, in the Bear Brand suit, there has been little discovery, that already concluded in other actions may be made available to it under stipulation— and as much seems to be the purpose of the parties. The court's inquiry after the argument of this motion indicates that substantial progress has been made in the Greensboro action in pretrial procedures; and to the extent that depositions have already been taken in the New York actions, a stipulation of counsel can readily provide for their use to supplement the discovery in Greensboro. The court is satisfied that a trial on the merits can be reached as readily in Greensboro as in this district.

■ Other factors favor the transfer. The parties to this litigation have little or no contact with this district and the choice of forum is of minimal consequence.[9] Scott & Williams has its principal sales office at High Point, North Carolina (within the Greensboro

5. 28 U.S.C. § 1400(b). *See* Schnell v. Peter Eckrich & Sons, 365 U.S. 260, 262–263, 81 S.Ct. 557, 5 L.Ed.2d 546 (1961); Fourco Glass Co. v. Transmirra Prods. Corp., 353 U.S. 222, 229, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957); *cf.* Brunette Machine Works, Ltd. v. Kockum Indus., Inc., 406 U.S. 706, 92 S.Ct. 1936, 32 L.Ed.2d 428 (1972).

6. Upon argument, it appeared that a jury trial had been demanded in the Greensboro action, whereas the New York suits were nonjury. Accordingly, Bentley argued it was not feasible to consolidate for trial purposes a nonjury and a jury case. This contention dissolves, since Scott & Williams stipulated it was prepared to waive a jury trial in the Greensboro suit. In any event, whether the actions should be consolidated for single trial purposes is for the transferee court to decide upon application by interested parties.

7. General Tire & Rubber Co. v. Watkins, 373 F.2d 361, 362 (4th Cir.), cert. denied, sub. nom. Firestone Tire & Rubber Co. v. General Tire & Rubber Co., 386 U.S. 960, 87 S.Ct. 1031, 18 L.Ed.2d 109 (1967). *See generally* Schneider v. Sears, 265 F. Supp. 257 (S.D.N.Y.1967).

8. *See, e. g.,* In re Suess Patent Infringement Litigation, 331 F.Supp. 549 (J.P.M.L.1971); In re Butterfield Patent Infringement, 328 F.Supp. 513 (J.P.M.L. 1970); In re Willingham Patent Litigation, 322 F.Supp. 1019 (J.P.M.L.1971).

9. *See* Unico Indus. Corp. v. S.S. Andros City, 323 F.Supp. 896, 897 n. 6 (S.D.N.Y. 1971), and cases cited therein.

court); its executive office and factory are in Laconia, New Hampshire; its only contact within this district is a sales office in New York City. It has no officers, employees or managing agents in this district who thus far have been deposed in the Bentley suit. Faigenbaum, a Pennsylvania corporation, has its only place of business in Melrose Park, Philadelphia, Pennsylvania. Bear Brand is an Illinois corporation, having its principal office and place of business in Chicago. Its only connection with this district is that it maintains a sales office in New York City and has engaged local counsel to represent it in its suit here against Scott & Williams. Billi-America, Inc., as already noted, has its only place of business in High Point, North Carolina. From the foregoing, it is apparent that a trial in this district would not particularly serve the convenience of witnesses who may be called by any of the aforesaid parties, or of the parties themselves.

■ Bentley's principal sales office and sales and technical personnel are located in Charlotte, North Carolina, much closer to Greensboro, North Carolina, than to New York City, and it has no place of business in this district; and since North Carolina is a center for the knitting industry, nonparty technical witnesses should be more readily available there to all the litigants. Seemingly this would indicate that the convenience of Bentley's witnesses would also be served by a trial in Greensboro. But Bentley disavows any plans to call witnesses from that area. Its principal office is in Rhode Island, and it asserts it intends to call its President and other witnesses who reside there or in other areas much closer to New York than to Greensboro, and that New York is more readily accessible, by air or train, which no doubt it is. It also contends that witnesses from England may be called, and again urges that flight travel to this metropolitan area is easier than to

Greensboro. However, these witnesses, whether they come from Rhode Island, Pennsylvania, or England, will have to travel in any event, and inconvenience then becomes a matter of degree. That Bentley's attorneys have their offices in this city is of minor significance as against other factors favoring transfer.[10] Thus, entirely apart from the husbanding of judicial time and effort, the elimination of duplicitous expense entailed by the conduct of the lawsuits in different districts, a substantial case is made, considering the convenience of witnesses and parties, that tilts the balance in favor of transfer.

The court is satisfied that a transfer to Greensboro will best serve the interests of justice and is in the interest of judicial economy and efficiency.

Accordingly, the motions to transfer are granted; the motion to sever is denied.

---

10. *See id.* at 897 n. 2 and cases cited therein.