**XEROX CORPORATION, Plaintiff,**
v.
**LITTON INDUSTRIES, INC., et al.,**
**Defendants.**
No. 72 Civ. 1758.

United States District Court,
S. D. New York.
Jan. 17, 1973.

Brumbaugh, Graves, Donohue & Raymond, New York City, for plaintiff; Frederick C. Carver, Francis J. Hone,

New York City, Stanley D. Robinson, Kaye, Scholer, Fierman, Hays & Handler, New York City, of counsel.

Morgan, Finnegan, Durham & Pine, New York City, for defendants; John A. Diaz, New York City, William Simon, Richard T. Colman, Alan M. Grimaldi, Howrey, Simon, Baker & Murchison, Washington, D.C., of counsel.

EDWARD WEINFELD, District Judge.

This is a patent infringement action, commenced by Xerox Corporation (hereafter Xerox), which two defendants, Litton Business Systems, Inc. (hereafter LBS) and Litton Systems, Inc. (hereafter LS) move to transfer pursuant to 28 U.S.C., section 1404(a) to the District of Connecticut. The third defendant, Litton Industries, Inc. (hereafter LI), the parent corporation of LBS and LS, moves to dismiss the complaint against it for improper venue under 28 U.S.C., section 1400(b); alternatively, it seeks a severance and stay of the claim against it pursuant to Rule 21 of the Federal Rules of Civil Procedure pending final determination of the action against LBS and LS.

There are also pending in the District of Connecticut separate actions, one commenced by LBS and the other by LS, against Xerox, the plaintiff herein, which involve not only the three patents that are the subject of this action, but also seventy-one others owned by Xerox. Xerox moved for a transfer of each action to this district, also pursuant to section 1404(a) or for a stay of those two actions pending final determination of this suit. LBS and LS cross-moved to enjoin Xerox from proceeding with this action. The motions there have also been argued and are sub judice.

The parties are in agreement that the New York and Connecticut actions, which involve complex and difficult issues of patent and antitrust law, should be resolved in one district. Indeed, it would be "an extravagantly wasteful and useless duplication of the time and effort of the federal courts [to permit] the simultaneous trial of two complex and elaborate cases involving substantially the same factual issues."[1] The parties differ only as to where the cases should be tried, whether in this district or in the Connecticut district.

A chronology of events is desirable. Xerox commenced this action against LI on April 28, 1972, charging it with infringement of three of its patents relating to the art of electrostatic copying.[2] Xerox alleged that LI's manufacture, use and sale of certain office copiers and electrophotographic papers infringed Xerox's patents Nos. 3,062,108, issued in 1962 (the '108 patent), 3,121,006, issued in 1964 (the '006 patent) and 3,324,291, issued in 1967 (the '291 patent). LI answered on June 28, 1972, denying infringement and validity of the patents and asserting they are unenforceable for violation of the antitrust laws and misuse in various respects. LI's answer also challenged jurisdiction over it on the ground that it is not present in this state and alleged, as already noted, improper venue.

On June 28, 1972, the very day LI interposed its defense, LBS and LS, its wholly owned subsidiaries, filed separate suits in the District of Connecticut, already referred to. LBS sued Xerox as a competitor and LS as a customer. The allegations in the respective complaints parallel the affirmative defense advanced by LI in answer to plaintiff's complaint in this action. They charge that Xerox over the past twenty-five years has achieved by various means an illegal monopoly in the electrostatic copier market. The broad sweep of the com-

1. General Tire & Rubber Co. v. Watkins, 373 F.2d 361, 362 (4th Cir.), cert. denied sub nom. Firestone Tire & Rubber Co. v. General Tire & Rubber Co., 386 U.S. 960, 87 S.Ct. 1031, 18 L.Ed.2d 109 (1967);

see generally, Schneider v. Sears, 265 F. Supp. 257 (S.D.N.Y.1967).

2. LS and LBS were added as defendants in an amended complaint filed on September 15, 1972.

plaints in those actions encompasses a pool of seventy-four patents which plaintiffs allege Xerox has accumulated over the years by purchase or otherwise in furtherance of its alleged monopolistic practices. Included within those seventy-four patents are the three relating to plain paper copiers and coated paper copiers that are the subject of the instant suit. The validity, infringement and anti-trust issues with respect to all seventy-four patents owned by Xerox necessarily embrace those with respect to the three patents in this suit. However, the complaints raise additional issues that are not present in the New York action. These include Xerox's alleged illegal patent licensing process in the electrostatic copying market; its alleged refusals to deal in connection with its sale and leasing of electrostatic copying machines; its alleged illegal tying arrangements in connection with its sale and leasing of electrostatic copying machines, as well as other practices in furtherance of the claimed monopolization of the electrostatic copying market in violation of sections 1 and 2 of the Sherman Act. Plaintiffs in the Connecticut suits seek, among other relief, treble money damages for Xerox's alleged violation of the antitrust laws; an injunction against future violations of the antitrust laws, and a declaratory judgment that "xerox," "xerography" and "xerographic" have become generic and are in the public domain.

Against that background we consider the motion to transfer this action under section 1404(a). The initial inquiry on such a motion is whether the action is one which "might have been brought" in the proposed transferee district.[3] Venue for patent infringement is governed by 28 U.S.C., section 1400(b), which provides that such an action may be brought "in the judicial district where the defendant resides, or where the defendant has committed acts of infringe-

ment and has a regular and established place of business." As to LBS and LS there is no dispute that this suit "might have been brought" against each in the District of Connecticut, since they have regular and established places of business and have committed the alleged infringing acts there. However, a different situation exists as to LI, the parent corporation. It denies it is present, has a regular or established place of business, or has committed acts of infringement in New York or Connecticut, which, if so, would mean as to it venue is improper in this district and also that the District Court of Connecticut is not one where the action "might have been brought" and hence it is not transferable there. LI, accordingly, moves to dismiss for lack of proper venue, or, in the alternative, if venue in this district is found to be proper, it seeks a severance and stay of the claim against it pending the final determination of the Connecticut suits. Xerox, contrariwise, contends that venue in this district is proper as to LI upon a claim that LBS and LS are alter egos of LI, a matter of sharp factual dispute. If Xerox's alter ego theory is upheld, then the two subsidiaries were in that status in Connecticut as well as in this district, in which event the action against LI is one which might have been brought in Connecticut and so is transferable there.

Since there is no issue as to transferability as against LBS and LS, it is desirable first to consider whether they have sustained their burden that a change of venue is justified under section 1404(a) in terms of convenience of parties and witnesses and in the interests of justice.

Xerox, a New York corporation, has its headquarters and principal place of business at Stamford, within the District of Connecticut. Interrogatories served upon Xerox in the Connecticut actions require the production of docu-

---

3. *See* Van Dusen v. Barrack, 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960).

ments numbering in the hundreds of thousands. Many of these are stated to be located in Stamford, although Xerox asserts, as hereafter discussed, that many other relevant documents are located in Rochester, New York, or at its attorneys' offices in New York City.

■ Both LBS and LS are registered and qualified to do business in Connecticut. LBS has several unincorporated divisions which function and carry on business there. One division is the Royal Typewriter Company (Royal). Its activities are directly involved in the infringement charges in this suit. At its plant at Hartford, Connecticut, Royal assembles and tests the alleged infringing electrostatic copiers. Thus, inspection of the alleged offending machinery may be made there. In addition, Royal's headquarters and administrative offices are located at Hartford, where its executives function. Documents relating to LBS' plain and coated paper copiers are located either at the executive offices or the plant facility in Hartford. Royal also has sales and service offices in West Hartford and Milford, both of which regularly engage in the sale or leasing of the plain and coated paper copiers and in the sale of coated paper for use in the latter. LBS' plain and coated paper copiers are utilized in the day by day operations of the Hartford, West Hartford and Milford offices, as well as at the offices of several other LBS divisions in Connecticut.

LS is not engaged in the manufacture, sale or lease of plain or coated paper copiers of any kind. However, in its day to day operations it utilizes such machines manufactured by or for LBS at its sales offices in West Hartford, at its power transmission plant in Hartford, and at its plant and sales office in Oakville, Connecticut.

LBS and LS have served notices to depose thirty-six witnesses. Six are residents of Connecticut; only one is a resident of this district, and the others are scattered throughout the country. The '006 inventors reside in Ohio; the '108 patentee lives in London, England, and the '291 patentee in West Henrietta, New York, about 250 miles from this courthouse and within the Western District of New York. Since many of the witnesses are beyond the subpoena reach of both the Connecticut and Southern New York District Courts, their depositions under the Rules are to be taken within the district of their residence or employment.[4] In these instances it is of little moment where the trial is conducted,[5] and if any of the witnesses, so widely scattered, voluntarily agree to testify elsewhere, whether upon deposition or at the trial, it will make little difference in terms of their convenience where they appear.[6] On its face, with Xerox's headquarters as well as plants and offices of LBS and LS located in Connecticut, where the alleged infringing products are assembled and tested, where many of the documents pertaining to the issues are kept, and with the convenience of most witnesses as readily met by a trial in Connecticut as in New York, the balance of convenience strongly favors transfer to that district.

■ But Xerox urges that countervailing factors warrant that the action remain here. It emphasizes that in addition to its office in Stamford, Connecticut, it maintains an office at Rochester, New York, where it asserts it has its principal sales, research, development and manufacturing facilities, and that most of its files relevant to the litigations are located there; further, that copies of pertinent documents which have already been assembled are at the offices of its attorneys in this city. Parenthetically, it must be noted that the statute is concerned with the convenience of parties and their witnesses, and not with that of

---

4. Rule 45(d)(2).

5. *Cf.* Oil & Gas Ventures—First 1958 Fund Ltd. v. Kung, 250 F.Supp. 744, 757 (S.D.N.Y.1966).

6. *Cf.* Faigenbaum Mach., Inc. v. Scott & Williams, Inc., 344 F.Supp. 1267, 1272 (S.D.N.Y.1972).

the attorneys.[7] It is clear, moreover, that those documents are only a small portion of all that are subject to discovery and many will have to be brought from Xerox's Rochester office to either New York or Connecticut or even examined at Rochester. As to witnesses, Xerox alleges that its witnesses will be primarily from the Rochester area and elsewhere throughout the country, but again, as in the instance of LBS' and LS' witnesses, most of them will have to be deposed at the districts of their residence, and if they agree to testify elsewhere, whether upon deposition or at trial, it will matter little to them whether it is conducted in the District of Connecticut or in this district.

Xerox also stresses that it is the plaintiff in four other patent infringement suits commenced in this district against: (1) Dennison Manufacturing Co.;[8] (2) Nashua Corp.;[9] (3) Saxon Business Products;[10] and (4) International Business Machines Corp.[11] The first three involve only the validity of the '006 patent and the fourth action involves the '108 patent; only Dennison and International Business contain antitrust countercharges. The first three cases, pending respectively, six, four and two years, were assigned to this court[12] in July of 1972, and except for a motion recently made by Dennison to prevent Xerox from asserting allegedly new infringing claims, which was denied,[13] this court is no more knowledgeable about the issues or problems involved in the actions than is any other court before whom the cases are yet to be tried. The Dennison case, the earliest in point of time, is far from being reached. The new issues raised by Xerox have started a new round of discovery which will delay the trial date. Although the action was commenced by Xerox in 1967, the case has moved at a leaden-footed pace and to date no pretrial order has been entered. Moreover, and significantly, upon the application of Xerox, the antitrust issues in Dennison have been severed and stayed. The other three cases were started much later than Dennison and no motion to consolidate has been made.[14] Indeed, Xerox has shown no greater disposition to move these cases than it has in the instance of Dennison.

■ In a realistic sense, the parties, insofar as the substance of the charges in this action go, have little or no contact with this district, and plaintiff's choice of forum here is of minimal consequence.[15] It is mainly Royal's activities in Connecticut where the alleged infringing products are assembled and tested and where relevant records and documents are kept, that are of significance. In addition, relative calendar conditions in the two districts favor the transfer.[16] In this district the median time from issue to trial in civil cases is twenty-seven months, whereas in the District of Connecticut it is twelve

---

7. Faigenbaum Mach., Inc. v. Scott & Williams, Inc., 344 F.Supp. 1267, 1272 (S.D.N.Y.1972); Unico Indus. Corp. v. S. S. Andros City, 323 F.Supp. 896, 897 (S.D.N.Y.1971); Transcontinental Serv. Corp. v. True Temper Corp., 319 F.Supp. 920, 922 (S.D.N.Y.1970); Cressman v. United Air Lines, 158 F.Supp. 404, 407 (S.D.N.Y.1958).

8. 67 Civ. 3302.

9. 69 Civ. 546.

10. 71 Civ. 2630.

11. 70 Civ. 1596.

12. International Business Machines has been assigned to a different judge.

13. This court also granted in 1970 a motion to dismiss an interpleader counterclaim in Nashua.

14. In fact, although the late Judge McLean had suggested consolidation of the Dennison, Saxon and Nashua actions, involving the '006 patent, Xerox opposed consolidation.

15. See Unico Indus. Corp. v. S. S. Andros City, 323 F.Supp. 896, 897 & n. 6 (S.D.N.Y.1971) and cases cited therein.

16. Parsons v. Chesapeake & Ohio Ry., 375 U.S. 71, 73, 84 S.Ct. 185, 11 L.Ed.2d 137 (1963); A. Olinick & Sons v. Dempster Bros., 365 F.2d 439, 455 (2d Cir. 1966).

months.[17] I am persuaded that taking into account all significant factors a change of venue is justified, and accordingly the motion made by defendants LBS and LS pursuant to section 1404(a) is granted.

There remains for final consideration LI's motion to dismiss as to it for lack of proper venue. LI is a Delaware corporation with its principal place of business at Beverly Hills, California, where it functions as the parent of LBS and LS, as well as of some ninety other wholly owned subsidiaries. It categorically denies that it is doing or has ever done business, has or ever had a regular and established place of business, or committed any acts of infringement in this district. It specifically denies it has any employees on its payroll in this state, and particularly that it did or now carries on business under the names of "Royal Typewriter Company," "Royfax" or "Royal," the division of LBS which allegedly engaged in the infringing conduct. In further elaboration of its position, it asserts that it does not and never has exercised control or direction of the day to day business operations of LBS or LS and that each subsidiary was and is a separate, fully functioning and independent corporate entity with complete responsibility for its own operations; that each has its own articles of incorporation, bylaws, directors, officers, books of account, bank accounts, operating employees and corporate records. To sustain its claim that the subsidiaries are indeed separate entities and function entirely independently of it, LI emphasizes the scope of business of each —at the close of the fiscal year 1971, LBS had gross assets of more than $350,000,000 and gross sales in excess of $440,000,000 and LS had gross assets of more than $475,000,000 and gross sales

of approximately $340,000,000. These allegations of corporate integrity find some support in the record. It appears that an effort was made to preserve the separate and independent identities of LBS and LS, as well as of other subsidiaries, and if so, the fact of intercorporate relationship based upon LI's 100% ownership of the stock of LBS and LS is, by itself, insufficient to pierce the corporate veil and establish that each is the alter ego of the parent.[18]

Xerox, however, seeks to overcome the force of LI's showing based upon the alleged manner in which LI represents itself to the public and its corporate structure, which it asserts establish that LBS and LS are indeed alter egos and that LI has a regular and established place of business and committed acts of infringement in this district.

In support of its alter ego theory, Xerox contends that LI holds out Royfax, which assembles, markets and distributes the alleged infringing Royal Bond copier, as a "Division of Litton Industries"; that the Royal Bond copier is on display at, is marketed from and is sold or leased at Elmsford, New York, and 29 John Street, New York City, within this district; that the name "Litton Industries" is displayed at the aforesaid premises, as well as at three other offices within this district. Xerox also refers to two individuals employed by Royal Typewriter Company (Royfax) who were supplied with business cards. Upon their initial employment, these cards identified them as being with "Royfax, a division of Litton Business Systems." Subsequently those two employees and about twenty other sales personnel working out of the office at 29 John Street, New York City, were supplied additional cards which identi-

17. The Annual Report of the Director of the United States Courts for the Fiscal Year Ending June 30, 1972, Table C–10.

18. *Cf.* Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925); *see also* Blount v. Peerless Chems. (P.R.), Inc., 316 F.2d

695, 699 (2d Cir.), cert. denied, 375 U.S. 831, 84 S.Ct. 76, 11 L.Ed.2d 62 (1963); Fisser v. Int'l Bank, 282 F.2d 231, 238 (2d Cir. 1960); Berkman v. Ann Lewis Shops, 246 F.2d 44, 48 (2d Cir. 1957); Echeverry v. Kellogg Switchboard & Supply Co., 175 F.2d 900, 903 (2d Cir. 1949).

fied "Royfax" as "A Division of Litton Industries."

As to the various premises referred to, LI denies it owns or leases the space; affidavits are submitted that each place is leased either by LBS or LS. As to the business cards, LI counters with an affidavit that it never had in its employ the two individuals referred to. Additionally, to negative the inference urged by Xerox based upon the business cards, an affidavit is submitted which alleges that the individuals are employed by LBS and that their employment records, including payroll, pension and health and insurance benefits are located at the LBS office at Hartford, Connecticut. Affidavits are also submitted by each employee, who swears he is employed by Royfax; that he is paid by checks drawn on Royal Typewriter Company; that during the entire course of his employment he has had no contact with LI; that he has never known any person employed by LI; that he has never reported to nor had any person employed by LI report to him; that he has never held himself out as being employed by or representing LI in any capacity; that at all times he has held himself out as an employee of Royfax or the Royal Typewriter Company of LBS. In the light of LI's denials of ownership or control, plaintiff's reliance upon the mere presence of the name "Litton Industries" or the display of its logo at the five premises and the employees' use of the business cards is a rather weak rod upon which to support the alter ego theory.[19]

However, plaintiff, in its further effort to sustain venue, relies upon the depositions of two officers of LI which were taken soon after the argument of these motions. Based thereon, Xerox contends that LBS and LS (as well as other subsidiaries of LI) have no independent corporate existence and stresses, among other matters, the corporate interrelationship between parent and subsidiaries; that they have their principal places of business at the same address in Beverly Hills, California; they have many common officers and directors; they all use the parent's trademark "Litton" and the logo "li"; they are represented by the same attorneys in this case; that various departments of the parent, such as accounting, audit, legal, as well as others, work for the subsidiaries as well; the parent's stock option plan includes employees of the subsidiaries. There are additional allegations challenging the subsidiaries' financial independence, such as that the parent advances funds to the subsidiaries, guarantees their performance of contractual obligations and guarantees their leases. In sum, based upon the foregoing, Xerox contends "the interweaving of the parent and its numerous subsidiaries has been so pervasive as to obliterate any real distinction between them." This claim is sharply challenged by LI and the other defendants who, as already noted, emphasize the basic structural, functional and operational independence of each. Xerox in turn takes the position that the officers who were deposed and also submitted affidavits did not testify or aver on personal knowledge of facts but upon information supplied by employees who were not deposed.

The factual controversy is such that it cannot be disposed of on the basis of the conflicting affidavits, especially where an affiant's knowledge of facts is questioned.[20] Additional evidence, which will afford the opportunity to ob-

19. Cf. Knapp-Monarch Co. v. Casco Prods., 342 F.2d 622, 625 (7th Cir. 1965); Echeverry v. Kellogg Switchboard & Supply Co., 175 F.2d 900, 904 (2d Cir. 1949).

20. Cf. Washington Post Co. v. Keogh, 125 U.S.App.D.C. 32, 365 F.2d 965, 970–971 (1966), cert. denied, 385 U.S. 1011, 87 S.Ct. 708, 17 L.Ed.2d 548 (1967); Union Ins. Soc'y of Canton Ltd. v. William Gluckin & Co., 353 F.2d 946, 952–953 (2d Cir. 1965). The record thus far developed in this case does not require this court to follow Handlos v. Litton Indus., Inc., 304 F.Supp. 347 (E.D.Wis.1969), where it was held the subsidiaries of LI were the alter egos of the parent.

serve the demeanor of witnesses, will more readily permit determination of the issue. A full disclosure of the day by day operations of parent and the subsidiaries, including particularly matters pertaining to xerographic office copiers; the degree of the intertwining between them; and the extent of the direction and control of the subsidiaries, if any, by the parent, must be further inquired into to permit a final determination of the alter ego issue,[21] and this should await trial, since the trial of the issues of patent infringement and antitrust violations will readily unearth the basic facts.[22]

If, upon a trial, it is found venue was not proper, it follows the action against LI must be dismissed; if, on the other hand, it is found the subsidiaries were the alter egos of LI, then it follows venue was proper and the action against it properly transferable to the District of Connecticut, there to be determined upon the merits. In view of the considerations favoring the transfer of the action against LS and LBS to the District of Connecticut, it would not be burdensome to any of these giant corporations to have the issue of venue as to LI determined in that action.

It is recognized that the unresolved alter ego issue also leaves open the question of whether the action against LI "might have been brought" in the District of Connecticut and hence the court's power at this point to order the transfer. However, the circumstances of this case permit a resolution of the problem. If, as already noted, LBS and LS are found to be alter egos of LI, then they are also such in Connecticut and the action against LI might have been brought there; additionally, LI has represented that if Xerox desires to have it as a party to the action against LBS and

LS in Connecticut, it will there apply to intervene after transfer. Finally, the disputed issue, as well as the need for taking additional testimony thereon, may readily be eliminated upon the transfer of this action by LI waiving any venue objection, as is its right[23]—a course which seems particularly warranted under the facts of this case. Since in any event the issues in the transferred claims against LBS and LS are to be resolved upon the merits, plaintiff should not object to LI's waiver of venue.

---

21. *Cf.* Agrashell, Inc. v. Bernard Sirotta Co., 344 F.2d 583, 589 (2d Cir. 1965); Gelfand v. Tanner Motor Tours, Ltd., 339 F.2d 317, 323 (2d Cir. 1964).

22. *See* Vibber v. United States Rubber Co., 255 F.Supp. 47, 50 (S.D.N.Y.1966); Kierulff Associates v. Luria Bros. & Co.,

240 F.Supp. 640, 642 (S.D.N.Y.1965); Carolyn Chenilles, Inc. v. Ostrow & Jacobs, Inc., 168 F.Supp. 894, 898–899 (S.D.N.Y.1958).

23. Hoffman v. Blaski, 363 U.S. 335, 343, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960).